Chief Judge GIERKE
delivered the opinion of the Court.
I. INTRODUCTION
Senior Judge Robinson O. Everett, writing for this Court, once quoted the fundamental *134 legal maxim, ‘“Always salt down the facts first; the law will keep.’ ”[1] He reaffirmed this point with this intuitive observation, “ ‘In the very nature of things, it is impossible for a court to enter a valid judgment declaring the rights of parties to litigation until the facts on which those rights depend have been “salted down” in a manner sanctioned by law.’ ”[2] Although we address several issues here, the pivotal issue is whether this Court has an adequate factual record to determine if trial defense counsel performed a reasonable investigation to establish the necessary factual predicate for later tactical decisions in this capital case.
After our completion of direct review in this case,[3] the Supreme Court decided Wiggins v. Smith.[4] The Supreme Court in Wiggins applied the “clearly established” precedent of Strickland v. Washington,[5] that governs claims of ineffective assistance of counsel.[6] In so doing, the Supreme Court found ineffective representation by a defense counsel in a capital case who failed to pursue leads and to expand the mitigation investigation into the defendant’s traumatic life history.[7] In Wiggins, the Supreme Court reaffirmed that defense counsel has a fundamental duty to perform a reasonable investigation.[8]
In a petition for extraordinary relief in the nature of a writ of habeas corpus, Petitioner asserts that the trial defense counsel who defended him in his capital case were similarly deficient in not reasonably investigating his traumatic life history. Therefore, Petitioner also asserts that his case is controlled by the precedent of Strickland as illustrated by the Wiggins case.
To support his claim, Petitioner has filed voluminous documents and affidavits. But all the facts relevant to this issue are not apparent on the face of the record. In light of the more recent Supreme Court decision in Wiggins, we conclude that we do not have the factual predicate to determine if our pri- or decision addressing the issue of ineffective assistance of counsel was correct under the Strickland standard that constituted clearly established law at the time of our initial direct review of this case.
Given this conclusion, we will afford the parties the opportunity to have the facts “ ‘salted down’ in a manner sanctioned by law.”[9] Therefore, we order a DuBay[10] evidentiary hearing to address the issue of whether Petitioner’s trial defense counsel “chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentencing strategy impossible”[11] thereby prejudicing Petitioner in the capital sentencing phase of the court-martial.
II. APPELLATE HISTORY AND BACKGROUND OF PETITION FOR EXTRAORDINARY RELIEF IN THE NATURE OF A WRIT OF HABEAS CORPUS
This is a capital case that this Court affirmed on direct appeal.[12] Later, the Supreme Court granted certiorari and affirmed *135 this Court’s decision.[13] The case has been forwarded to the President for action under Article 71(a), Uniform Code of Military Justice (UCMJ),[14] but he has not yet acted.
The detailed appellate history of this case is documented in two prior opinions of this Court.[15] Most recently, on December 20, 2005, we dismissed without prejudice Petitioner’s two petitions seeking a writ of error coram nobis.[16] We also expressly stated that Petitioner could “refile a writ of habeas corpus with this Court.”[17]
Availing himself of this opportunity, Petitioner filed a petition for extraordinary relief in the nature of a writ of habeas corpus with this Court on February 2, 2006. This Court issued a show cause order, and the Government responded on April 14, 2006. Petitioner filed a reply brief on April 28, 2006. This Court heard oral argument on this writ on May 16, 2006.
In the present pleading, Petitioner combines the substance of his two prior petitions seeking a writ of error coram nobis. He requests that this Court apply to his military justice capital case the authority of three recent Supreme Court cases — Apprendi v. New Jersey,[18] Ring v. Arizona,[19] and Wiggins.[20]
These cases and this Court’s consideration of Petitioner’s habeas corpus petition raise threshold legal issues, as well as issues on the merits. The threshold issues relate to this Court’s jurisdiction to consider this petition, the appropriateness of the writ of habeas corpus at this Court, and the applicability — including the retroactive application — of this recent legal precedent to the present proceedings.
In our most recent opinion in this case,[21] we resolved the first two issues. We held that this Court has collateral review jurisdiction over this case during “the period after ‘there is a final judgment as to the legality of the proceedings’ under Article 71(c)(1) [UCMJ], but before the case is ‘final’ under Article 76 [UCMJ].”[22] The procedural posture of this case has not changed since our most recent opinion; therefore, this Court still has collateral review jurisdiction over this case.
Moreover, as this Court’s statutory subject matter jurisdiction over this case is established, we may invoke the All Writs Act[23] to address the substantive issues here.[24] Again, in our most recent opinion in this case, we also held that Petitioner can seek a writ of habeas corpus under the All Writs Act at this Court.[25]
*136 We must resolve one additional threshold issue: In light of the unique procedural posture of this case, can Petitioner avail himself of any of the legal holdings in Ring, Apprendi, and Wiggins to support his claims?
The issues relating to the merits of this habeas petition question the authority of the President to promulgate aggravating factors, the reliability of the capital sentencing weighing process, and the effectiveness of counsel in making decisions relating to investigating the background of Petitioner.
III. DISCUSSION OF THE FINAL THRESHOLD ISSUE — DO THE HOLDINGS OF RING, APPRENDI, AND WIGGINS APPLY TO PETITIONER’S CASE ON COLLATERAL REVIEW?
In Griffith v. Kentucky,[26] the Supreme Court established the legal principle that its decision that announces a “new rule” applies to all criminal cases still pending on direct review.[27] But when a case is final, there is an issue as to the retroactive application of the new rule.
In Teague v. Lane,[28] the Supreme Court clarified and modified previous decisions regarding retroactivity of new constitutional rules. The Court held that new constitutional rules should not be applied retroactively to convictions on collateral review that have become final, unless a‘new rule falls into one of two exceptions: (1) the new substantive rule places “ ‘certain kinds of ... individual conduct beyond the power of the criminal law-making authority to proscribe’ or (2) the new procedural rule requires “procedures without which the likelihood of an accurate conviction is seriously diminished.”[29]
Applying the principles of both Griffith and Teague, we must address two issues: First, when does a military justice case become final to trigger the application of Teague? Second, do either of the Teague exceptions pertain to this case?
We hold that a military justice case is final for purposes of Teague when “there is a final judgment as to the legality of the proceedings” under Article 71(c), UCMJ. Article 71(c)(1), UCMJ, provides:
If a sentence extends to death, dismissal, or a dishonorable or bad-conduct discharge and if the right of the accused to appellate review is not waived, and an appeal is not withdrawn, under section 861 of this title (article 61), that part of the sentence extending to death, dismissal, or a dishonorable or bad-conduct discharge may not be executed until there is a final judgment as to the legality of the proceedings (and with respect to death or dismissal, approval under subsection (a) or (b), as appropriate). A judgment as to legality of the proceedings is final in such cases when review is completed by a Court of Criminal Appeals and-—
(A) the time for the accused to file a petition for review by the Court of Appeals for the Armed Forces has expired and the accused has not filed a timely petition for such review and the case is not otherwise under review by that Court;
(B) such a petition is rejected by the Court of Appeals for the Armed Forces; or
(C) review is completed in accordance with the judgment of the Court of Appeals for the Armed Forces and—
(i) a petition for a writ of certiorari is not filed within the time limits prescribed by the Supreme Court;
(ii) such a petition is rejected by the Supreme Court; or
*137 (iii) review is otherwise completed in accordance with the judgment of the Supreme Court.
The plain language of this statute identifies the events that complete appellate review and establishes when judgments are final as to the legality of the proceedings. The clear import of this provision is to certify the legality of the proceedings and permit action on the sentence to be taken under Article 71(a) or (b), UCMJ.
We conclude that Petitioner’s conviction and sentence are final for purposes of application of Teague because all of his direct judicial appeals have been exhausted. The requirement of Article 71(c)(1)(C)(iii), UCMJ, to establish “a final judgment as to the legality of the proceedings” has been met.
Presently, this Court has completed direct review, and the Supreme Court granted certiorari and eventually, affirmed this Court’s decision.[30] As review by the Supreme Court is completed in accordance with the judgment of the Supreme Court, this case is final for Teague purposes.
All that remains for the case to become final under Article 76, UCMJ,[31] and therefore in the military justice system, is the President’s decision whether to order the death sentence executed or to grant executive clemency. We have stated that the “Presidential action is akin to a state governor’s action, and as such, is not part of the direct judicial review of the case.”[32]
Supreme Court precedent supports our conclusion of when a case is final for Teague purposes. Quoting its earlier decision in Allen v. Hardy,[33] the Supreme Court in Teague defined a “final” conviction in a state court as one “ ‘where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed.’ ”[34]
Moreover, in Clay v. United States,[35] the Supreme Court defined finality with respect to cases where it has granted a petition for certiorari. The Supreme Court first observed that the precise meaning of finality depends on context. It then explained:
Here, the relevant context is postconviction relief, a context in which finality has a long-recognized, clear meaning: Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.[36]
Our conclusion that a military justice case is final for Teague purposes when “there is a final judgment as to the legality of the proceedings” under Article 71(c), UCMJ, is consistent with this authority.
Moreover, we view this construction of finality for Teague purposes as placing a servicemember in the similar position as other federal and state prisoners where the law applicable to their case is generally established after direct review is complete.[37] If a servieemember, after Supreme Court review, received the benefit of all new constitutional rules, a military accused could continue to litigate a case indefinitely thereby thwarting application of the rule of finality. Teague did not sanction such an unending litigation procedure and neither do we.
We therefore reject any construction of the UCMJ that would permit such endless litigation. Instead, we embrace the language of *138 Article 71(c), UCMJ, defining a “final judgment as to the legality of the proceedings” as the event that triggers an application of Teague. Having addressed when a military justice case becomes final to trigger the application of Teague, we turn to the application of Teague to this capital case.[38]
In Teague, the Supreme Court left open the issue of application of the Teague principle to a capital case. But the Supreme Court recently decided this issue in Schriro v. Summerlin.[39] Applying Teague in a capital ease, the Court reaffirmed Teague’s holding relating to retroactivity of new constitutional rules and clarified the distinction between substantive and procedural rules stating:
New substantive rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, see Bousley v. United States, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State’s power to punish, see Saffle v. Parks, 494 U.S. 484, 494-495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); Teague v. Lane, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). Such rules apply retroactively because they “necessarily carry a significant risk that a defendant stands convicted of ‘an act that the law does not make criminal’ ” or faces a punishment that the law cannot impose upon him. Bousley, supra, at 620, 118 S.Ct. 1604 (quoting Davis v. United States, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974)).
New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of “ ‘watershed rules of criminal procedure’ implicating the fundamental fairness and accuracy of the criminal proceeding.” Saffle, supra, at 495, 110 S.Ct. 1257 (quoting Teague, 489 U.S. at 311, 109 S.Ct. 1060). That a new procedural rule is “fundamental” in some abstract sense is not enough; the rule must be one “without which the likelihood of an accurate conviction is seriously diminished.” Id. at 313, 109 S.Ct. 1060 (emphasis added). This class of rules is extremely narrow, and “it is unlikely that any ... ‘ha[s] yet to emerge.’ ” Tyler v. Cain, 533 U.S. 656, 667 n. 7, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (quoting Sawyer v. Smith, 497 U.S. 227, 243, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990)).[40]
Applying these standards in Schriro, the Supreme Court expressly addressed whether its recent decision in Bing applied retroactively.[41] The respondent, Summerlin, was convicted of first-degree murder and sentenced to death.[42] Under the Arizona capital sentencing scheme, a judge, instead of a jury, found the aggravating circumstance that rendered him death-eligible. After direct review was complete, the Supreme Court decided Apprendi.[43] Apprendi was the legal predicate for the later Bing holding that a jury must find the aggravating factor[44]
In his federal habeas case, Summerlin sought to invalidate his death sentence relying on Bing.[45] But the Supreme Court, in Schriro, applied Teague to capital cases and *139 clarified Teague’s distinction between substantive and procedural rules.[46] The Court held that the then-recent decisions in Ring and implicitly in Apprendi, as Ring’s legal predicate, are “properly classified as procedural” and do not apply retroactively to eases that have completed direct review.[47] The Court reasoned that neither of the two exceptions to Teague applied to Summerlin’s collateral attack to trigger the retroactive application of Ring.[48]
The Supreme Court rejected the position that Ring was a substantive new rule stating:
Respondent nevertheless argues that Ring is substantive because it modified the elements of the offense for which he was convicted. He relies on our statement in Ring that, “[bjecause Arizona’s enumerated aggravating factors operate as ‘the functional equivalent of an element of a greater offense,’ the Sixth Amendment requires that they be found by a jury.” [Ring v. Arizona,] 536 U.S. at 609[, 122 S.Ct. 2428] (citation omitted); see also Sattazahn v. Pennsylvania, 537 U.S. 101, 111, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003) (plurality opinion). The Ninth Circuit agreed, concluding that Ring “reposition[ed] Arizona’s aggravating factors as elements of the separate offense of capital murder and reshap[ed] the structure of Arizona murder law.” 341 F.3d at 1105.
A decision that modifies the elements of an offense is normally substantive rather than procedural. New elements alter the range of conduct the statute punishes, rendering some formerly unlawful conduct lawful or vice versa. See Bousley, 523 U.S. at 620-21[, 118 S.Ct. 1604]. But that is not what Ring did; the range of conduct punished by death in Arizona was the same before Ring as after. Ring held that, because Arizona’s statutory aggravators restricted (as a matter of state law) the class of death-eligible defendants, those aggravators effectively were elements for federal constitutional purposes, and so were subject to the procedural requirements the Constitution attaches to trial of elements. 536 U.S. at 609, 122 S.Ct. 2428. This Court’s holding that, because Arizona has made a certain fact essential to the death penalty, that fact must be found by a jury, is not the same as this Court’s making a certain fact essential to the death penalty. The former was a procedural holding; the latter would be substantive. The Ninth Circuit’s conclusion that Ring nonetheless “reshap[ed] the structure of Arizona murder law,” 341 F.3d at 1105, is particularly remarkable in the face of the Arizona Supreme Court’s previous conclusion to the contrary. See State v. Towery, 204 Ariz. 386, 390-91, 64 P.3d 828, 832-33, cert. dism’d, 539 U.S. 986, 124 S.Ct. 44, 156 L.Ed.2d 702 (2003)[49]
As a predicate for discussing the possible retroactive application of Ring under the second exception of Teague, the Supreme Court further explained why Ring was a new procedural rule stating:
Ring’s holding is properly classified as procedural. Ring held that “a sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty.” 536 U.S. at 609, 122 S.Ct. 2428. Rather, “the Sixth Amendment requires that [those circumstances] be found by a jury.” Ibid. This holding did not alter the range of conduct Arizona law subjected to the death penalty. It could not have; it rested entirely on the Sixth Amendment’s jury-trial guarantee, a provision that has nothing to do with the range of conduct a State may criminalize. Instead, Ring altered the range of permissible methods for determining whether a defendant’s conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fash *140 ion are prototypical procedural rules, a conclusion we have reached in numerous other contexts.[50]
Having concluded that the new rule of Ring was procedural, the Supreme Court next addressed whether Ring fell under the retroactivity exception for “ ‘watershed rules of criminal procedure’ implicating the fundamental fairness and accuracy of the criminal proceeding.”[51] Rejecting a variety of arguments that a jury is a more accurate factfinder, the Supreme Court concluded that it “cannot confidently say that judicial factfinding seriously diminishes accuracy.”[52] The Supreme Court found its conclusion supported by its prior “decision in DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) (per curiam) ... [where] we refused to give retroactive effect to Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), which applied the Sixth Amendment’s jury-trial guarantee to the States.”[53]
Notwithstanding this authority, Petitioner attempts to rely on the authority of Ring to support his habeas petition. In light of Schriro, we conclude that, based on the foregoing discussion, Petitioner cannot avail himself of the authority of Ring to support his petition.
Also, we consider whether Petitioner can rely on the authority of Apprendi to support his habeas petition. In Apprendi, the Supreme Court held that other than the fact of a prior conviction, “any fact that increases the penalty for a crime beyond the prescribed statutory maximum,” whether the statute calls it an element or a sentencing factor, “must be submitted to a jury, and proved beyond a reasonable doubt.”[54] We conclude that Petitioner cannot rely on Apprendi in this collateral attack as it does not apply in post-conviction cases.[55]
We expressly reject Petitioner’s suggestion that we depart from Supreme Court precedent because of the unique circumstances of military justice and that we formulate a more generous rule to permit Petitioner to avail himself of the retroactive application of Apprendi and Ring. In part because military cases go through a similar review as both federal and state capital cases, there is no basis for a different military rule to determine whether new law will have retroactive application. Moreover, we are comfortable adhering to the Supreme Court’s Teague analysis because in doing so we comply with the congressional mandate that courts-martial “apply the principles of law ... generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with [the UCMJ].”[56]
In summary, in light of the previously discussed Supreme Court precedent, we conclude that Petitioner cannot rely on either Ring or Apprendi to support his habeas petition. Therefore, we need not further address any of Petitioner’s issues relying on the authority of either Ring or Apprendi.
Finally, we consider whether Petitioner can rely on the authority of Wiggins to support his habeas petition. The simple answer *141 is an unequivocal yes. Unlike the recent cases of Ring and Apprendi, Wiggins did not announce a new constitutional rule. Wiggins is a post-conviction attack alleging ineffective assistance of counsel during capital sentencing and applying the “clearly established” legal principles that govern claims of ineffective assistance of counsel in Strickland,[57] The Supreme Court in explaining the procedural context of Wiggins stated,
The amendments to 28 USC 2254 [28 USCS 2254], enacted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA), circumscribe our consideration of Wiggins’ claim and require us to limit our analysis to the law as it was “clearly established” by our precedents at the time of the state court’s decision.[58]
At its core, Wiggins addresses a misapplication of the “clearly established” legal principles of Strickland.[59] As such, both Wiggins and Strickland present governing legal authority relevant to Petitioner’s habeas petition. We now turn to the merits of Petitioner’s arguments relating to Wiggins.
IV. The Wiggins Issue
A. The Supreme Court’s Decision in Wiggins
In Wiggins, the Supreme Court provided some guidance as to what is a reasonable investigation in the context of a death penalty case.[60] The Supreme Court was not concerned with whether defense counsel should have presented a mitigation case. Instead, the narrow issue was “whether the investigation supporting [defense] counsel’s decision not to introduce mitigating evidence of Wiggins’ background was itself reasonable.”[61] The focus was to evaluate if the defense investigation was reasonable to establish the factual predicate so that counsel would be in a position later to make reasonable tactical decisions.
At the outset the opinion reaffirmed that the analysis of this issue must be conducted in light of the established precedent of Strickland, stating:
We established the legal principles that govern claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An ineffective assistance claim has two components: A petitioner must show that counsel’s performance was deficient, and that the deficiency prejudiced the defense. Id. at 687[, 104 S.Ct. 2052], To establish deficient performance, a petitioner must demonstrate that counsel’s representation “fell below an objective standard of reasonableness.” Id. at 688[, 104 S.Ct. 2052]. We have declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that “the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.”[62]
The Supreme Court noted that both Strickland and Wiggins “stem[] from counsel’s decision to limit the scope of their investigation into potential mitigating evidence.”[63] Then the Supreme Court again quoted Strickland to explain that the deference given to strategic judgments depends on the adequacy of the investigations supporting those judgments:
Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all *142 the circumstances, applying a heavy measure of deference to counsel’s judgments.[64]
Finally, the Supreme Court explained that any assessment of counsel is an objective inquiry that is “context-dependent.”[65] That is, reasonableness under professional norms must be evaluated “ ‘from counsel’s perspective at the time.’ ”[66]
Applying these principles, the Supreme Court evaluated defense counsel’s decision in a capital case not to expand their investigation beyond a presentence investigation report prepared by the Division of Parole and Probation and Department of Social Services records documenting foster care placements of Wiggins.[67] The Supreme Court concluded that this decision to limit the investigation “fell short of the professional standards that prevailed in Maryland in 1989.”[68]
The Supreme Court also reasoned that the scope of the investigation was unreasonable in light of the notice counsel had of Wiggins’s tragic and troubled childhood; counsel had obtained this information from the presentenee investigation report prepared by the Division of Parole and Probation and Department of Social Services records.[69] These documents presented factual red flags of Wiggins’s problematic past that included: “[pjetitioner’s mother was a chronic alcoholic; Wiggins was shuttled from foster home to foster home and displayed some emotional difficulties while there; he had frequent, lengthy absences from school; and, on at least one occasion, his mother left him and his siblings alone for days without food.”[70]
The Supreme Court stated that “any reasonably competent attorney would have realized that pursuing these leads was necessary to making an informed choice among possible defenses, particularly given the apparent absence of any aggravating factors in petitioner’s background.”[71] Furthermore, the Supreme Court emphasized there was no evidence that “further investigation would have been fruitless.”[72] The Supreme Court also stated that defense counsel’s “failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment.”[73]
Linking its decision again to the Strickland standard, the Supreme Court concluded that, “Even assuming [defense counsel] limited the scope of their investigation for strategic reasons, Strickland does not establish that a cursory investigation automatically justifies a tactical decision with respect to sentencing strategy. Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy”[74]
In finding defense counsel in Wiggins deficient, the Supreme Court emphasized “that Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does Strickland require defense counsel to present mitigating evidence at sentencing in every case.”[75] The Supreme Court made clear the basis for its conclusion of deficient representation here — “that ‘strategic choices made after less than complete investigation are reasonable’ only to the extent that ‘reasonable professional judgments support the limitations on investigation.’”[76] Finally, the Supreme Court established this simple benchmark as the legal test for evalu *143 ating a defense investigation: “A decision not to investigate thus ‘must be directly assessed for reasonableness in all the circumstances.’ ”[77]
Having found defense counsel deficient, the Supreme Court turned to the second prong of the Strickland analysis to evaluate prejudice.[78] The Court found that the mitigating evidence counsel failed to discover and present in this case was “powerful.”[79] This evidence of Wiggins’s abuse included the following:
Wiggins experienced severe privation and abuse in the first six years of his life while in the custody of his alcoholic, absentee mother. He suffered physical torment, sexual molestation, and repeated rape during his subsequent years in foster care. The time Wiggins spent homeless, along with his diminished mental capacities, further augment his mitigation case. Petitioner thus has the kind of troubled history we have declared relevant to assessing a defendant’s moral culpability.[80]
The Supreme Court explained that based on “both the nature and the extent of the abuse petitioner suffered, we find there to be a reasonable probability that a competent attorney, aware of this history, would have introduced it at sentencing in an admissible form.”[81] The Supreme Court then concluded “that had the jury been confronted with this considerable mitigating evidence, there is a reasonable probability that it would have returned with a different sentence.”[82] Accordingly, the death sentence was set aside and the case remanded for further proceedings.[83]
B. Relationship of Wiggins to this Court’s Prior Consideration of the Issue of Ineffective Assistance of Counsel Arising From Failing to Reasonably Investigate the Defense Case in Extenuation and Mitigation
In considering Petitioner’s ineffective assistance of counsel claim, this Court looks to the law in effect at the time of the original 1994 decision on direct appeal. That is what the Supreme Court did in Wiggins.[84]
Wiggins did not make new law.[85] But it did both clarify and illuminate the standards for a reasonable investigation in a criminal trial, in general, and in a death penalty case, in particular. The import of Wiggins is that it serves as an example of how the prior Strickland standards should be applied. Simply stated, the value of Wiggins is to provide guidance in the application of the well established precedent of Strickland regarding the scope of a reasonable investigation in a death penalty case. Therefore, we use Wiggins to inform our approach under Strickland, as opposed to treating it as a new precedent or rule.[86] Wiggins is a new lens through which we view a fundamental principle of law relating to the application of the Strickland standards for a reasonable investigation in a capital case. In light of Wiggins, we have a clearer view of the application of Strickland in this death penalty context.
We also apply Wiggins to the present case not in the context of a direct appeal, but instead, in the context of Petitioner’s habeas petition filed with this Court. The petition was filed during the period after there was a final judgment as to the legality of the proceedings under Article 71(c)(1), UCMJ, but *144 before the case is final under Article 76, UCMJ. This Court has not previously articulated standards for habeas review under the All Writs Act of convictions following completion of Article 71, UCM-J, review.[87] Therefore, it is appropriate now that we address those standards.
It appears that the Article III courts have not been able to develop a consistent standard for collateral review of courts-martial under 28 U.S.C. § 2241 (2000). In United States ex rel. New v. Rumsfeld,[88] the United States Court of Appeals for the District of Columbia Circuit recently described the case law as so “tangled” and marked by “uncertainty” that it left the court with “serious doubt whether the judicial mind is really capable of applying the sort of fine gradations in deference that the varying formulae may indicate.”[89]
In New, the court decided that it could proceed without resolving the question of which standard it should apply.[90] In the course of its discussion, the court noted that the United States Court of Appeals for the Third Circuit in Brosius v. Warden,[91] had applied to court-martial cases the standards under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified principally at 28 U.S.C. §§ 2244-2254 (2000), for reviewing state court decisions.[92] In Brosius, the court said:
Whatever Burns [v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953)] means, we have no doubt that at least absent a challenge to the constitutionality of the statute under which the defendant was convicted, such as that raised in Levy, our inquiry in a military habeas case may not go further than our inquiry in a state habeas case. Thus, we will assume — but solely for the sake of argument — that we may review determinations made by the military courts in this case as if they were determinations made by state courts. Accordingly, we will assume that 28 U.S.C. § 2254(e)(1) applies to findings of historical fact made by the military courts. Under this provision, “a determination of a factual issue made by a State court” is “presumed to be correct,” and a habeas petitioner has “the burden of rebutting the presumption of correctness by clear and convincing evidence.” In considering other determinations made by the military courts, we will assume that 28 U.S.C. § 2254(d) applies. Under this provision,
an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[93]
The task before Article III courts, of course, is different from the task before us. Article III courts are external to the military justice system, so they need to determine what standard comports with the full and fair requirement in Burns v. Wilson.[94] As our *145 consideration of this case is within the UCMJ system before a case is final under Article 76, UCMJ, we must decide what standard best meets the “necessary or appropriate” requirements in the All Writs Act for collateral review within the military justice system.[95]
To that end, we look for standards that fulfill the basic purposes of the military justice system: balancing the individual right to a habeas review against the need for timely, certain, and final review. In our view, rather than creating our own standard, we should look to the balance that Congress has legislated under the AEDPA.
In the AEDPA, Congress limits granting relief on habeas corpus claims to those where a proceeding on the merits:
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.[96]
We adopt these AEDPA standards as to both the scope of review and the standard of review to evaluate habeas corpus claims raising issues of constitutional law.[97] That is, we will determine whether this Court’s prior review:
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [prior] proceeding.[98]
With respect to the factual component of a mixed fact/law question in the prior proceeding: “a determination of a factual issue made [in the prior proceeding] is ‘presumed to be correct,’ and a habeas petitioner has ‘the burden of rebutting the presumption of correctness by clear and convincing evidence.’ ”[99]
We decline to adopt the provisions of 28 U.S.C. § 2255 (2000) as to a habeas petition that raises a constitutional issue. We note that 28 U.S.C. § 2255 initially appears to be an attractive option as to the standards for collateral review of courts-martial, because this statute pertains generally to collateral attacks on federal convictions. This procedure is akin to a federal prisoner filing a motion to vacate a sentence and is heard by the same judge that initially heard the criminal trial on the merits.[100] But in our most recent decision relating to this case, we explained that Petitioner cannot obtain habeas review under 28 U.S.C. § 2255 because “in the military justice system there are no standing courts____”[101] In our view, the procedures Congress established for the sentencing tribunal to review in a case under 28 U.S.C. § 2255 are unsuitable and inappropriate to guide this Court’s consideration of a collateral habeas petition.
Our adoption of the AEDPA provisions for reviewing state court decisions, codified at 28 U.S.C. §§ 2244-2254, makes federal habeas review by this Court the same as habeas review of state convictions in other federal courts. These provisions best serve to protect the liberty and interests of individual servieemembers and to bolster deference to military legal determinations.[102] We need *146 not address here all the issues relating to the application of the AEDPA to a collateral challenge to a court-martial judgment in general or to the present pleading in particular.[103] We need only presently address the legal standard to measure Petitioner’s right to an evidentiary hearing on his claim.[104]
To address this issue, we look first to the relevant provisions of the AEDPA, 28 U.S.C. § 2254(e)(2), that explicitly address when a Petitioner is not entitled to an evidentiary hearing. This statute states:
If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
This congressional direction as to when a habeas corpus applicant is not entitled to an evidentiary hearing is not applicable here. The condition precedent (“applicant has failed to develop the factual basis of a claim in State court proceedings”) is not present in this case.[105] Indeed, the documents to support and raise the issue of ineffective assistance of counsel were originally filed at this Court while the case was pending on direct review.[106]
As this Court is not precluded from ordering the evidentiary hearing, we next address whether one is appropriate. It is appropriate to order an evidentiary hearing where a petitioner alleges facts which, if proved, would entitle him to relief, the record reveals a genuine factual dispute as to the alleged facts, and the petitioner did not receive a hearing on the issue.[107] The decision *147 whether to hold an evidentiary hearing is discretionary.[108]
We view this AEDPA standard, 28 U.S.C. § 2254, for the right to an evidentiary hearing as substantially the same standard that we have applied to evaluate an appellant’s right to an evidentiary hearing if the issue of ineffective assistance of counsel is raised on direct appeal.[109] Therefore, for purposes of resolving a factual component, we will apply the factors identified in United States v. Ginn[110] in determining whether a DuBay evidentiary hearing is required.
As Petitioner’s case is not yet final, we conclude that the application of this standard is appropriate because of the unique status of this Court and the present posture of Petitioner’s ease which is still within the military justice system. Our application of this same rule will result in consistent evaluation of this right to an evidentiary claim as long as the case is not yet final under the UCMJ. Applying this “objective evidence” standard here, we conclude for several reasons that an evidentiary hearing is necessary.
The application of both Strickland and Wiggins to this case is rooted in the Petitioner’s constitutional right to effective assistance of counsel. The decision in Wiggins states that a reasonable investigation is a necessary predicate for any tactical decisions by counsel.[111] In light of Wiggins, our evaluation of an ineffective assistance of counsel *148 claim in a capital case must focus on the defense investigation to determine if it was reasonable.[112]
In our initial consideration of the merits of this case on direct appeal this Court addressed defense counsel’s investigation.[113] Our opinion states “defense counsel conducted his own investigation,”[114] and we proceeded to explain how defense counsel made reasonable tactical decisions related to the sentencing proceeding (including the decision not to request funding for a mitigation specialist).[115] Our opinion states:
We hold further that defense counsel’s investigation and presentation of defense mitigation evidence and their decisions regarding use of expert testimony were reasonable. While use of an analysis prepared by an independent mitigation expert is often useful, we decline to hold that such an expert is required. What is required is a reasonable investigation and competent presentation of mitigation evidence. Presentation of mitigation evidence is primarily the responsibility of counsel, not expert witnesses. In this case defense counsel investigated appellant’s background and competently presented his evidence during the sentencing phase of the trial.[116]
However, this holding does not adequately develop the factual predicate to support it.[117] The facts in the opinion focus on the evidence offered in mitigation at trial.[118] Our prior opinion did not adequately review the nature of defense counsel’s investigation. Moreover, there was no discussion of the prevailing professional norms at the time as to what was a reasonable investigation or the “red flags” that should have alerted defense counsel to dig deeper to determine whether Petitioner was, indeed, the subject of specific childhood harm that might mitigate his culpability as alleged. The statement of legal conclusions and the absence of detailed factual analysis of what defense counsel did and did not do in investigating the case, reveals that our prior opinion did not address whether trial defense counsel “chose to abandon their investigation at an unreasonable juncture [thereby] making a fully informed decision with respect to sentencing strategy impossible.” [119]
The recent authority of Wiggins reveals that this Court previously did not adequately focus on reasonableness of the defense investigation. This deficiency in our initial decision requires that we now address “whether the investigation supporting counsel’s decisiones] ... was itself reasonable.”[120]
Moreover, in our initial consideration of the ineffective assistance of counsel claim on direct review, we did not order an evidentiary hearing regarding this issue. Therefore, Petitioner did not have an adequate opportunity on direct appeal to establish facts in an evidentiary hearing to support his ineffective assistance of counsel claim.[121]
*149 We acknowledge that Petitioner perhaps could have raised on direct appeal the precise issue that he now presents in his habeas petition because the present claim is based on the standards of a reasonable investigation stated in Strickland. But in Massaro v. United States,[122] the Supreme Court held that an ineffective assistance of counsel issue may be raised in a habeas petition irrespective of whether a petitioner could have raised it on direct appeal.[123] In light of Massaro, the past appellate path of this case does not preclude Petitioner from presenting to this Court his habeas claims of ineffective assistance.
Moreover, in Massaro the Supreme Court recognized that “in most cases a [habeas corpus] motion ... is preferable to direct appeal for deciding claims of ineffective-assistance.” [124] The Supreme Court also stated that a district court, a factfinding forum, rather than an appellate court is “best suited to developing the facts necessary to determining the adequacy of representation during an entire trial.”[125] The Supreme Court explained this point stating, ‘When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose.”[126] The Supreme Court pointed out the advantages of a habeas proceeding in developing the factual predicate for an ineffective assistance of counsel claim stating that, the “court may take testimony from witnesses for the defendant and the prosecution and from the counsel alleged to have rendered the deficient performance.”[127]
In Massaro, the Supreme Court stated it was “not holding] that ineffective-assistance claims must be reserved for collateral review.” [128] Indeed, Massaro does not preclude consideration of an ineffective assistance of counsel claim on direct appeal. However, if an ineffective assistance of counsel claim is addressed on direct appeal, Massaro leaves open the issue of how to address such cases, noting that “questions may arise in subsequent proceedings under [habeas corpus] concerning the conclusiveness of determinations made on the ineffective-assistance claims raised on direct appeal.”[129]
We now must decide how to address the question left open by the Supreme Court in Massaro. We are guided in this matter by the Supreme Court’s approach in Massaro which creates a preference in favor of factual development at a hearing.[130] If there has been no hearing, and important factual questions or mixed questions of fact and law remain after direct appeal, then those mat *150 ters must be addressed in a hearing before a determination can be made under the AED-PA standards.
In this case there has not been an evidentiary hearing on the issue of ineffective assistance of counsel. In light of Massaro, such a hearing is appropriate in our view if there remain important factual questions as to Petitioner’s claim of ineffective assistance of counsel.
We note that Petitioner has filed a voluminous set of wide ranging affidavits and documentary evidence to establish the factual predicate for his claim that “trial defense counsels’ conduct was deficient because the evidence reveals that counsel failed to adequately investigate and the ‘failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment.’ ” Petitioner asserts this evidence establishes that crucial mitigation evidence existed at the time of his trial, that a reasonable investigation should have produced it, and that the deficient investigation resulted in this substantial mitigation evidence not being presented at the capital sentencing hearing.
Petitioner has also alleged that this deficiency in the investigation of his case prejudiced his capital sentencing proceedings in two ways. Petitioner claims that trial defense counsel failed to identify critical mitigation evidence of Petitioner’s childhood and developmental problems arising from a traumatic and dysfunctional family life, his unnatural obsession with his girlfriend, and the impact of both drug and alcohol abuse on Petitioner generally and his offenses in particular. Petitioner further alleges that without this essential mitigation evidence, trial defense counsel was unable to present “any real evidence concerning [his] background or the impact on him, despite counsel’s desire and actual argument that the panel should consider this information.”
Finally, we consider a most important fact that this is a capital ease. The Supreme Court has applied Eighth Amendment principles to the military capital sentencing scheme “in the context of a conviction under Article 118 for murder committed in peacetime within the United States.”[131] Therefore, these constitutional principles pertain in the present case that is also within these parameters.
Two fundamental principles of Eighth Amendment law are the foundation for a reliable determination of a death sentence: a genuine narrowing of the class of persons eligible to receive the death penalty and individualized sentencing -a decision on a capital sentence on the basis of the character of the individual and the circumstances of the crime.[132] As to the second principle, the Supreme Court has stated that “the jury must be able to consider and give effect to any mitigating evidence relevant to a defendant’s background and character or the circumstances of the crime.”[133]
Reflecting these principles, this Court has stated:
One continuous theme is found throughout the death-penalty cases handed down by the Supreme Court over the last 30 years. That theme is reliability of result. Thus, the sine qua non of Gregg v. Georgia; Chambers v. Mississippi; Furman v. Georgia; and Lockhart v. Fretwell; Strickland v. Washington; and Ake v. Oklahoma, is that the Supreme Court has insisted there be a proper functioning of the adversarial system. A fair reading of these cases demonstrates that, in order for the adversarial system to work properly, the key ingredients are competent counsel; full and fair opportunity to present exculpatory evidence; individualized sentencing *151 procedures; fair opportunity to obtain the services of experts; and fair and impartial judges and juries.[134]
In Wiggins, the Supreme Court again reaffirmed the right of an accused in a capital case to present evidence in mitigation generally, and the type of mitigation evidence arising from a defendant’s traumatic background and childhood, character or the circumstances of the crime in particular. The Supreme Court in Wiggins stated:
Petitioner thus has the kind of troubled history we have declared relevant to assessing a defendant’s moral culpability. Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (“ ‘Evidence about the defendant’s background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background ... may be less culpable than defendants who have no such excuse’ ”); see also Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (noting that consideration of the offender’s life history is a “ ‘part of the process of inflicting the penalty of death’ ”); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (invalidating Ohio law that did not permit consideration of aspects of a defendant’s background).[135]
The Supreme Court expressly stated that this type of mitigating evidence “is powerful.”[136] We therefore must evaluate the reasonableness of trial defense counsel’s investigation knowing that there was possibly powerful mitigating evidence for trial defense counsel to discover in a reasonable investigation.
Petitioner has filed voluminous unrebutted affidavits[137] with this Court and documentary evidence to support his assertion that trial defense counsel failed to discover through reasonable investigation, and therefore failed to develop at trial, powerful mitigation evidence. The breadth and depth of this alleged information relate to and include the following: Petitioner’s parental and family history of alcoholism and substance addiction established Petitioner’s genetic proclivity for alcoholism; Petitioner’s long history of alcohol abuse explains his early development of alcoholism; Petitioner suffered great physical and emotional abuse arising from both neglect and rejection in his traumatic childhood; Petitioner lived in a world full of poverty, violence, chaos, neglect, and fear; Petitioner was shot at four times and repeatedly beaten. Petitioner alleges that in his case, as in Wiggins, the defense counsel failed to investigate and present “powerful” mitigating evidence.[138] Therefore, Petitioner argues that his case is materially indistinguishable from Wiggins. Again we consider most important, as explained above, that in our initial consideration of the merits of this case, we did not focus on the investigative aspects leading to defense counsel’s tactical decisions in sentencing and did not previously order a DuBay hearing to address this issue. In light of the unique history of this ease and all the other circumstances relating to this most important issue, we conclude that an evidentiary hearing is warranted into the circumstances of the representation in this capital court-martial related to the sentencing phase of the trial.
Petitioner has presented a potentially meritorious claim of ineffective assistance of counsel arising from his trial defense counsel’s failure to conduct a reasonable investi *152 gation, for not pursuing leads known to the trial defense counsel relevant to this matter, and for not expanding the mitigation investigation into the defendant’s traumatic life history. Petitioner has produced post-trial material which raises substantial questions about the reasonableness of the investigation upon which our 1994 decision rested.
As previously stated in Ginn, we identified the circumstances that permit this Court not to order a factfinding hearing and, therefore, allow this Court to decide the merits of this habeas claim now based solely on the affidavits and the record.[139] None of these circumstances are present here.
The affidavits and other evidence presently before this Court relating to ineffective assistance of counsel is the type of information that under Massaro and Wiggins, must be assessed in a habeas or DuBay hearing. The allegation of ineffective assistance of counsel presents mixed questions of fact and law that require assessment by a DuBay judge as to the credibility of witnesses, and the validity and accuracy of other factual evidence. Just as a habeas proceeding in an Article III court would need to assess this information in a habeas evidentiary hearing proceeding under the AEDPA, we are not in a position to evaluate the correctness of' our 1994 decision until the findings of fact are developed by a DuBay judge. In Wiggins, the Supreme Court stated, “In assessing the reasonableness of an attorney’s investigation, however, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.”[140] We must now determine if information the defense counsel had should have triggered further fruitful investigation into Petitioner’s traumatic family background and upbringing and Petitioner’s drug and alcohol abuse prior to and during the offenses.
V. Conclusion
Petitioner is entitled to an evidentiary hearing to establish the factual predicate for his claim. Accordingly, in light of Wiggins, we order an evidentiary hearing pursuant to DuBay to address the matters related to the defense investigation of Petitioner’s background and other matters that may have produced evidence in either extenuation or mitigation during the capital sentencing proceeding. The DuBay judge shall enter findings of fact and conclusions of law to address the following matters:
1. Identify potential sentencing evidence, if any, alleged by the defense that was omitted or incompletely presented at trial.
2. Address the facts, if any, under (1) that would have been developed through a reasonable investigation by a competent attorney under Strickland. In this regard, what did trial defense counsel do to investigate information to present in the capital sentencing phase of the court-martial? What information, if any, did the counsel know or should have known that would have triggered an investigation into Petitioner’s traumatic background or the omitted or incomplete evidence identified under (1)?
3. What impact did any deficiency in investigating this case, if any, have on tactical decisions made by trial defense counsel (including the decision to use or not to request or to use any expert assistance)? Whether any information identified under (1) could have led to a change in defense counsel’s trial tactics in sentencing phase?
4. Were trial defense counsel aware of the information contained in Petitioner’s affidavits filed at this Court regarding violence in Petitioner’s family home and neighborhood? The DuBay hearing will evaluate the credibility and reliability of all factual information Petitioner has filed with this Court to support his habeas corpus petition.
*153 5. The DuBay hearing will inquire into any other matters that relate to the issue of performance of trial defense counsel of the duty to conduct a reasonable investigation into the background of Petitioner, the omitted or incomplete evidence identified under (1), or any other evidence relevant to the capital sentencing proceeding, in light of prevailing professional norms at the time of the trial.
6. Whether there is a reasonable probability that, but for the omission at information identified under (1) through (5), the result of the sentencing proceeding would have been different? This requires a reweighing of the evidence adduced at trial and in the Du-Bay proceeding to determine this question: Had the panel been confronted with this evidence, was there a reasonable probability it would have returned a different sentence? The test is whether there is a reasonable probability that at least one member of the panel would have struck a different balance thereby not voting for a death sentence?[141]
The officer conducting the DuBay hearing will make findings of fact and conclusions of law.
Decision
The record of trial is returned to the Judge Advocate General of the Army for remand to the convening authority who will order a DuBay hearing to consider the previously identified issues. After such proceedings are concluded, the record of trial along with the DuBay judge’s findings of fact and conclusions of law will be returned directly to this Court for further review.

. United States v. Haney, 45 M.J. 447, 448 (C.A.A.F.1996) (quoting Erickson v. Starling, 235 N.C. 643, 71 S.E.2d 384, 395-96 (1952)).

. Id. at 448 (quoting Erickson, 71 S.E.2d at 396).

. United States v. Loving, 41 M.J. 213 (C.A.A.F.1994).

. 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. Wiggins, 539 U.S. at 522, 123 S.Ct. 2527.

. Id. at 523-38, 123 S.Ct. 2527.

. Id. at 521, 123 S.Ct. 2527 ('“[C]ounsel has a duty to make reasonable investigations' ” (quoting Strickland, 466 U.S. at 691, 104 S.Ct. 2052)).

. Haney, 45 M.J. at 448 (quoting Erickson, 71 S.E.2d at 396) (quotation marks omitted).

. United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967); see United States v. Flint, 1 M.J. 428, 429 (C.M.A.1976) ("A DuBay proceeding, in effect, is utilized to gather additional evidence or to resolve conflicting evidence before determining an issue presented to the appellate tribunal.”).

. Wiggins, 539 U.S. at 527-28, 123 S.Ct. 2527.

. Loving, 41 M.J. at 300.

. Loving v. United States, 517 U.S. 748, 774, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996).

. 10 U.S.C. § 871(a) (2000).

. Loving v. United States, 62 M.J. 235, 238 (C.A.A.F.2005); Loving v. Hart, 47 M.J. 438, 440 (C.A.A.F.1998), cert. denied, 525 U.S. 1040, 119 S.Ct. 590, 142 L.Ed.2d 533 (1998).

. Loving, 62 M.J. at 236.

. Id.

. 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In Apprendi, the Supreme Court interpreted the constitutional due process and jury trial guarantees to require that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” Id. at 490, 120 S.Ct. 2348.

. 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Applying Apprendi to the Arizona capital sentencing proceedings that required the finding of an aggravating factor. Ring required that a jury, rather than a judge, find the existence of the aggravating factor. Id.

. 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471.

. Loving, 62 M.J. at 236 (footnotes omitted).

. Id.

. 28 U.S.C. § 1651(a) (2000). The All Writs Act authorizes "all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions.” Id. "The Supreme Court has recognized this Court’s power to issue extraordinary writs under the All Writs Act.” Loving, 62 M.J. at 246 (citing Clinton v. Goldsmith, 526 U.S. 529, 534, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999)).

. Loving, 62 M.J. at 255-57.

. Id. at 255-56.

. 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

. Id. at 328, 107 S.Ct. 708.

. 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). We acknowledge the question of whether Teague applies to the review of federal convictions remains an open question, although the weight of authority suggests that it should apply in such proceedings. See Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 25.1, at 1146 n. 25, § 25.6, at 1226-28 (5th ed.2005).

. 489 U.S. at 311-13, 109 S.Ct. 1060 (citation omitted).

. Loving, 517 U.S. at 774, 116 S.Ct. 1737.

. 10 U.S.C. § 876 (2000).

. Loving, 62 M.J. at 247.

. 478 U.S. 255, 258 n. 1, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986).

. 489 U.S. at 295, 109 S.Ct. 1060; see also Griffith, 479 U.S. at 321 n. 6, 107 S.Ct. 708.

. 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003).

. Id.

. See Teague, 489 U.S. at 310; 28 U.S.C. § 2254(d)(1) (2000) (limiting relief to claims based on legal rules actually in effect when the state court decided the cases, as opposed to those in effect during the much longer period that elapses before the conviction becomes final); 28 U.S.C. § 2255 (2000) (limiting relief for federal prisoners to claims based on “violations of the Constitution or laws of the United States ... or is otherwise subject to collateral attack____”).

. Teague was not a capital case, and the Supreme Court expressly stated, "Because petitioner is not under sentence of death, we need not, and do not, express any views as to how the retroactivity approach we adopt today is to be applied in the capital sentencing context.” 489 U.S. at 314 n. 2, 109 S.Ct. 1060.

. 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).

. Id. at 351-52, 124 S.Ct. 2519 (footnote omitted).

. Id. at 352-56, 124 S.Ct. 2519.

. Id. at 350, 124 S.Ct. 2519.

. Id.

. Id. at 351, 124 S.Ct. 2519.

. Id.

. Id. at 352-58, 124 S.Ct. 2519.

. Id. at 353, 124 S.Ct. 2519.

. Id. at 352-56, 124 S.Ct. 2519.

. Id. at 354-55, 124 S.Ct. 2519.

. Id. at 353, 124 S.Ct. 2519.

. Id. at 352, 124 S.Ct. 2519 (quoting Saffle, 494 U.S. at 495, 110 S.Ct. 1257, quoting Teague, 489 U.S. at 311, 109 S.Ct. 1060) (quotation marks omitted).

. Id. at 356, 124 S.Ct. 2519.

. Id. at 356-57, 124 S.Ct. 2519.

. 530 U.S. at 490, 120 S.Ct. 2348.

. See Schriro, 542 U.S. at 358, 124 S.Ct. 2519 (stating that "Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review”); see also Blakely v. Washington, 542 U.S. 296, 323, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (O’Connor, J., Rehnquist, C.J., and Kennedy, J., dissenting) (stating "that Ring (and a fortiori Apprendi) does not apply retroactively on habeas review....”); Harris v. United States, 536 U.S. 545, 581, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (Thomas, J., Stevens, J., Souter, J., and Ginsburg, J., dissenting) ("No Court of Appeals, let alone this Court, has held that Apprendi has retroactive effect.”); see, e.g., Coleman v. United States, 329 F.3d 77, 82 (2d Cir.2003) (noting that "at least seven United States Courts of Appeals have held that ... Apprendi’s new rule does not apply retroactively____”); United States v. Sanchez-Cervantes, 282 F.3d 664, 671 (9th Cir.2002) (”[W]e hold that Apprendi does not apply retroactively to cases on initial collateral review.").

. Article 36, UCMJ, 10 U.S.C. § 836 (2000).

. Wiggins, 539 U.S. at 522, 123 S.Ct. 2527.

. Id. at 520, 123 S.Ct. 2527.

. Id.

. Id. at 522-534, 123 S.Ct. 2527.

. Id. at 523, 123 S.Ct. 2527.

. Id. at 521, 123 S.Ct. 2527.

. Id.

. Id. at 521-22, 123 S.Ct. 2527 (quoting Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052).

. Id. at 523, 123 S.Ct. 2527.

. Id. (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052).

. Id. at 522-531, 123 S.Ct. 2527.

. Id. at 524, 123 S.Ct. 2527.

. Id. at 527-28, 534, 123 S.Ct. 2527.

. Id. at 525, 123 S.Ct. 2527.

. Id.

. Id.

. Id. at 526, 123 S.Ct. 2527.

. Id. at 527, 123 S.Ct. 2527 (emphasis added).

. Id. at 533, 123 S.Ct. 2527.

. Id. (quoting Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052).

. Id. (quoting Strickland, 466 U.S. at 691, 104 S.Ct. 2052).

. Id. at 534-35, 123 S.Ct. 2527.

. Id. at 534, 123 S.Ct. 2527.

. Id. at 535, 123 S.Ct. 2527 (citing Penry v. Lynaugh, 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), abrogated on other grounds by Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002)).

. Id.

. Id. at 536, 123 S.Ct. 2527.

. Id. at 538, 123 S.Ct. 2527.

. Id. at 521-22, 123 S.Ct. 2527; see Williams v. Taylor, 529 U.S. 362, 390, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

. See 539 U.S. at 522, 123 S.Ct. 2527.

. See Slaughter v. Parker, 450 F.3d 224, 234 (6th Cir.2006); Hamblin v. Mitchell, 354 F.3d 482, 487 (6th Cir.2003).

. Our parallel treatment of other forms of collateral review under the All Writs Act also has not focused on the standard of review. See, e.g., Garrett v. Lowe, 39 M.J. 293 (C.M.A.1994).

. 448 F.3d 403 (D.C.Cir.2006).

. Id. at 406-08.

. Id. at 408.

. 278 F.3d 239 (3d Cir.2002).

. New, 448 F.3d at 407-408. A recent law review note also suggested that Article III courts import the AEDPA standards for reviewing state decisions into Article III review of military cases. John K. Chapman, Note, Reforming Federal Habeas Review of Military Convictions: Why AEDPA Would Improve the Scope and Standard of Review, 57 Vand. L.Rev. 1387 (2004).

. Brosius, 278 F.3d at 245 (citation omitted).

. 346 U.S. 137, 141-43, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); see generally Chapman, supra note 92, at 1399-1402; Dwight H. Sullivan, The Last Line of Defense: Federal Habeas Review of Military Death Penalty Cases, 144 Mil. L.Rev. 1 *145 (1994); Richard D. Rosen, Civilian Courts and the Military Justice System: Collateral Review of Courts-Martial, 108 Mil. L.Rev. 5 (1985).

. See 28 U.S.C. § 1651(a); Irving, 62 M.J. at 246-47.

. 28 U.S.C. § 2254(d).

. We do not address in this case the question of what standard this federal court should apply when dealing with a collateral attack on a federal conviction and sentence when the claim is based upon nonconstitutional federal law. See Hertz & Liebman, supra note 28, § 41.3b, at 1922-27.

. 28 U.S.C. § 2254(d).

. 28 U.S.C. § 2254(e)(1).

. 28 U.S.C. § 2255.

. Loving, 62 M.J. at 254.

. Chapman, supra note 92, at 1428.

. See Loving, 62 M.J. at 259 (stating that "it is not clear whether our entertaining a petition for a writ of habeas corpus would trigger the AEDPA 'second or successive writ’ language and thereby preclude an Article III court collateral review under the doctrine of abuse of the writ”).

. A fundamental error of the dissent is its erroneously confusing two separate issues -further review or consideration of a habeas petition and actually granting habeas relief. The dissent cites the legal test for granting relief under the AEDPA to support its conclusion that the "AED-PA bars further review of this issue.” In the view of the majority, the narrow issue here is only whether Petitioner has met the legal standard to establish his right to an evidentiary hearing on his claim of ineffective assistance of counsel. The dissent does not address this issue but instead decides the merits of the habeas petition.

. See Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir.2005), where the court stated:
In determining whether a petitioner is entitled to an evidentiary hearing under AEDPA, the district court must:
determine whether a factual basis exists in the record to support the petitioner’s claim. If it does not, and an evidentiary hearing might be appropriate, the court’s first task in determining whether to grant an evidentiary hearing is to ascertain whether the petitioner has "failed to develop the factual basis of a claim in State court.”.... If [] the applicant has not "failed to develop” the facts in state court, the district court may proceed to consider whether a hearing is appropriate or required under Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) [overruled on other grounds in Keeney v. Tamayo-Reyes, 504 U.S. 1, 5, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992)].

. When his case was pending before this Court on direct appeal, Petitioner filed numerous documents with this Court to support his claim that trial defense counsel was ineffective in failing to request funds for a mitigation specialist or in failing to present a cohesive, comprehensive background, including social, medical and environmental history. Petitioner has filed duplicates with the present habeas petition. We note that on direct appeal the Government also filed affidavits relevant to these issues.

. See Martinez v. Dretke, 111 Fed.Appx. 224, 229 (5th Cir.2004), where the court noted:
Where the petitioner’s allegations cannot be resolved without examining evidence beyond the record, the district court should conduct a hearing. An evidentiary hearing is required *147 where a state habeas petitioner did not receive a state court hearing and alleges facts which, if proved, would entitle him to relief, and the record reveals a genuine factual dispute as to the alleged facts.
Footnotes omitted; Bell v. True, 413 F.Supp.2d 657, 699 (W.D.Va.2006) (holding that an evidentiary hearing was appropriate to address the issue of failure of trial counsel’s to conduct a reasonable background investigation in a capital case where a petitioner establishes "facts that, if true, would entitle him to relief,” and it appears from the record that "the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing”) (citations and quotation marks omitted); King v. Bell, 392 F.Supp.2d 964, 974 (M.D.Tenn.2005) ("King is entitled to an evidentiary hearing if he alleges sufficient grounds for issuance of the writ, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing.”); Marshall v. Hendricks, 103 F.Supp.2d 749, 767-69 (D.N.J.2000) (addressing the power of a federal court to hold an evidentiary hearing to address a habeas claim arising out of a state court proceeding), rev’d in part by 307 F.3d 36 (3d Cir.2002). We observe that we do not evaluate Petitioner’s right to an evidentiary hearing under the standards to evaluate successor habeas claims.

. 2 Steven Alan Childress & Martha S. Davis, Federal Standards of Review § 13.08, at 13-59 (3d ed.1999).

. See United States v. Murphy, 50 M.J. 4, 16 (C.A.A.F.1998) ("An appellant is entitled to an evidentiary hearing if his or her posttrial affidavits raise material questions of fact that might give rise to relief.”).

. 47 M.J. 236 (C.A.A.F.1997). In Ginn, we stated that the following principles apply in evaluating whether a post-trial evidentiaiy hearing is necessary:
First, if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant’s favor, the claim may be rejected on that basis.
Second, if the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.
Third, if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.
Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate” the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.
Fifth, when an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record (including the admissions made in the plea inquiry at trial and appellant’s expression of satisfaction with counsel at trial) unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.
Sixth, the Court of Criminal Appeals is required to order a factfinding hearing only when the above-stated circumstances are not met.
Id. at 248.

. 539 U.S. at 522-23, 123 S.Ct. 2527.

. See Rompilla v. Beard, 545 U.S. 374, 377, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005).

. Loving, 41 M.J. at 249-50.

. Id. at 249.

. Id. at 249-50.

. Id. at 250.

. See Wiggins, 539 U.S. at 527-28, 123 S.Ct. 2527 (finding an unreasonable application of the Strickland principles when the State "court did not conduct an assessment of whether the decision to cease all investigation ... actually demonstrated reasonable professional judgment. The state court merely assumed that the investigation was adequate") (citations omitted).

. Loving, 41 M.J. at 249-50.

. Wiggins, 539 U.S. at 527-28, 123 S.Ct. 2527.

. Id. at 523, 123 S.Ct. 2527; see, e.g., Rompilla, 545 U.S. at 377, 125 S.Ct. 2456 (concluding that defense counsel were deficient in an investigation where "they failed to make reasonable efforts to review the prior conviction file, despite knowing that the prosecution intended to introduce Rompilla's prior conviction not merely by entering a notice of conviction into evidence but by quoting damaging testimony of the rape victim in that case”); Williams, 529 U.S. at 396, 120 S.Ct. 1495 (stating defense counsel has an "obligation to conduct a thorough investigation of the defendant’s background" (citing American Bar Association Standards for Criminal Justice 4-4.1, Commentary, at 4-55 (2d ed.1980))).

. We observe that our ordering an evidentiary hearing is consistent with the approach of other courts that have addressed the issue of ineffective assistance of counsel based on the failure to investigate. See, e.g., Syriani v. Polk, 118 Fed. Appx. 706, 721 (4th Cir.2004) (denying a habeas petition alleging ineffective assistance based on a *149 state court evidentiary hearing and on the conclusion that the jury had been presented with similar aggravating factors that the jury had decided were not outweighed by mitigating circumstances); see also Bell, 413 F.Supp.2d at 699 (holding that petitioner was entitled to evidentiary hearing on ineffective assistance of counsel claim).

. 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).

. Id. at 504, 123 S.Ct. 1690.

. Id.

. Id. at 505, 123 S.Ct. 1690.

. Id. at 504-05, 123 S.Ct. 1690.

. Id. at 505, 123 S.Ct. 1690. The Supreme Court in Massaro cited United States v. Griffin, 699 F.2d 1102, 1109 (11th Cir.1983) for the proposition that in a habeas proceeding, the defendant
has a full opportunity to prove facts establishing ineffectiveness of counsel, the government has a full opportunity to present evidence to the contrary, the district court hears spoken words we can see only in print and sees expressions we will never see, and a factual record bearing precisely on the issue is created.
We observe that in Wiggins, for example, the habeas review considered the record of trial, the facts developed in the post-conviction record, and judicial observations made during the post-conviction proceedings. 539 U.S. at 529-33, 123 S.Ct. 2527.

. 538 U.S. at 508, 123 S.Ct. 1690.

. Id.

. Id. at 505-06, 123 S.Ct. 1690. We do not view the fact that Massaro involved a habeas petition filed under 28 U.S.C. § 2255 as diminishing its authority for a preference in favor of factual development at a hearing.

. Loving, 517 U.S. at 755, 116 S.Ct. 1737.

. See Blystone v. Pennsylvania, 494 U.S. 299, 306-07, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990); see also Lowenfield v. Phelps, 484 U.S. 231, 244, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (“The use of ‘aggravating circumstances' is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury’s discretion.”); Zant v. Stephens, 462 U.S. 862, 879, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (“What is important at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime.”); Tuilaepa v. California, 512 U.S. 967, 971-72, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994).

. Penry, 492 U.S. at 328, 109 S.Ct. 2934.

. Murphy, 50 M.J. at 14-15 (citations omitted).

. 539 U.S. at 535, 123 S.Ct 2527.

. Id. at 534, 123 S.Ct. 2527.

. We note that the Government has never sought to update its affidavits or rebut Petitioner's factual assertions relating to Petitioner's collateral challenge raising the issue of ineffective assistance of counsel arising from a deficient investigation.

. See Wiggins, 539 U.S. at 534-35, 123 S.Ct. 2527 (detailing the "powerful" mitigation evidence that counsel failed to develop); see also Rompilla, 545 U.S. at 377-79, 125 S.Ct. 2456 (reasoning that counsel was ineffective in sentencing and finding prejudice due, in part, to defense counsel’s" failure to discover and present evidence that the defendant grew up in a “slum environment” and had a traumatic and abusive family background).

. See 47 M.J. at 243, 248; see also United States v. Perez, 18 C.M.A. 24, 26, 39 C.M.R. 24, 26 (1968).

. 539 U.S. at 527, 123 S.Ct. 2527.

. See Wiggins, 539 U.S. at 537, 123 S.Ct. 2527.