

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-28-2008

# Armann v. Warden FCI McKean

Precedential or Non-Precedential: Precedential

Docket No. 07-3874

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Armann v. Warden FCI McKean" (2008). *2008 Decisions.* Paper 172.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/172

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-3874

———

KURTIS E. ARMANN

v.

WARDEN FCI McKEAN,

Appellant

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 04-cv-00118E)
District Judge:  Honorable Sean J. McLaughlin

———

Argued October 1, 2008
Before:  FISHER, CHAGARES and
HARDIMAN, *Circuit Judges*.

(Filed: November 28, 2008 )

Thomas E. Booth (Argued)
United States Department of Justice
Appellate Section, Room 1511
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Rebecca R. Haywood
Office of United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
    *Attorneys for Appellant*

Thomas W. Patton (Argued)
Office of Federal Public Defender
1001 State Street
1111 Renaissance Centre
Erie, PA 16501
    *Attorney for Appellee*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

Appellee Kurtis Armann filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Western District of Pennsylvania. The District Court adopted the Magistrate Judge's decision to grant Armann's motion for an evidentiary hearing to develop factually

whether he was mentally incompetent on the day of his plea and sentencing before a military court-martial. The Government appeals the District Court's order. The issue before this Court is whether the District Court erred in adopting the Magistrate Judge's decision to grant an evidentiary hearing after determining that the military courts did not adjudicate Armann's mental incompetency claim "on the merits" under 28 U.S.C. § 2254(d). For the reasons set forth, we will reverse the District Court's order.

## I. BACKGROUND

### A. The military proceedings

#### 1. Armann's conduct and the court-martial proceedings

Kurtis Armann served as a private in the United States Army and was stationed in Germany. In October 1998, he attempted to kill Private Toni Bell by shooting her. Armann and Bell had previously entered into an agreement in which Bell would pay Armann to kill Bell's in-laws. However, when Bell backed out of the agreement and demonstrated reluctance to pay, Armann planned to kill her. On the night of the shooting, Armann, dressed in black clothing, waited with a makeshift rifle near the gate at which Bell stood guard. When Bell arrived for duty, Armann peered through the rifle scope, taking aim for her head. He fired the rifle but the bullet struck Bell in her neck and she survived.

Armann was charged with attempted premeditated murder with a firearm, conspiracy to commit premeditated

murder, violating a lawful general regulation by wrongfully possessing a firearm with a silencer, and wrongfully using marijuana, in violation of Articles 80, 81, 92, and 112a of the Uniform Code of Military Justice (UCMJ), respectively. He was held in pretrial custody at the Mannheim Confinement Facility in Germany. The Military Judge held a pretrial hearing where Master Sergeant Carlos Perez, Chief of Correctional Supervision Branch, testified that since arriving at the Mannheim facility, Armann was taking medication to treat migraine headaches. The Judge ordered a Sanity Board to evaluate Armann's mental health. Armann's trial counsel objected, arguing that neither the medical officers at the confinement center nor the other government authorities had come forth with questions about Armann's mental health. Counsel stated that he had "no basis to question Private Armann's ability to assist in his defense or . . . appreciate the ongoing proceedings."

On February 8, 1999, the Sanity Board released its findings, stating that Armann was not suffering from any "severe mental disease or defect" at the time of his criminal conduct and that he had "sufficient mental capacity to understand the nature of the proceedings and to conduct his own defense, or cooperate intelligently in his own defense." The Board made such findings after reviewing Armann's outpatient records, other medical records, and the documents relating to the charges. It also reported "negative findings of repeated medical examinations and laboratory tests" regarding "the extent of any organic brain damage."

4

At a court-martial proceeding held on March 19, 1999, Armann pleaded guilty to all four counts. Prior to accepting Armann's plea, the Military Judge reviewed the allegations, which Armann elaborated upon and accepted as true. The Judge ensured that Armann was voluntarily pleading guilty and that by doing so Armann was waiving certain rights. Armann's attorney also acknowledged that he had received a copy of the Sanity Board determination. Following the plea, the Judge held a sentencing hearing at which Armann's expert testified that, although Armann was taking medication for his migraine headaches, he was sane at the time of the offense. The Judge sentenced Armann to a dishonorable discharge and thirty-eight years' imprisonment, which was then reduced to thirty-five years pursuant to a plea agreement.

On the day of (and the day before) Armann's plea and sentencing, the Mannheim facility administered various medications to him. The medical logs for the facility document that on March 18 and 19, Mannheim officials administered Seconal, Fironal, Fioricet, Compazine, Midrin, Phenergan, and Elavil to Armann at various times throughout each day. In his habeas petition, Armann provides various filings which indicate that such drugs may produce sedative effects that may impair one's mental and/or physical abilities or impact one's nervous system. At the plea and sentencing proceeding, the Military Judge did not inquire into whether Armann had taken any medication that day nor did Armann or his attorney raise any competency issues.

## 2. Armann's appeal to the ACCA

On July 19, 2000, Armann appealed the court-martial judgment to the Army Court of Criminal Appeals (ACCA).[1] Armann's principal brief presented three issues to the ACCA, alleging that Armann's conviction for possessing a firearm should be set aside because the applicable military regulations were not judicially noticed or accepted into evidence during the court-martial proceedings; the Military Judge erroneously attached a certain exhibit; and Armann's sentence was "substantially disproportionate" to his personal history.

Aside from the principal brief's assertions, Armann personally raised two additional issues pursuant to the rule set forth in *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which were attached to the principal brief as an appendix.[2] In his *Grostefon* filing, Armann first argued that he lacked

---

[1]This court was formerly known as the Court of Military Review as well as the Board of Review and is referred to as such in certain case law. At times in this opinion, we reference the current name where a court has referred to one of the previous titles.

[2]Under *Grostefon*, a member of the military has the right to personally raise issues to the military appellate courts should his or her attorney fail to do so. 12 M.J. at 436-37. *Grostefon* also requires the intermediate appellate court to acknowledge that it considered all of the defendant's claims, including those he personally raised. *Id.* at 436.

"complete mental responsibility" for the offenses. He stated that an affirmative defense exists where, at the time the offense is committed, a defendant is "unable to appreciate the nature and quality or the wrongfulness of the acts." As evidence of his lack of mental responsibility, he referred to the various medications that the Mannheim facility administered to him to treat his mental issues as well as his childhood history of abuse. As for his second argument, Armann asserted that the attempted murder and conspiracy charges were "multiplicious" and the Military Judge should not have sentenced him separately for each.

At no point in either Armann's principal brief or his *Grostefon* filing did he or his attorney raise the issue of whether Armann was mentally competent on March 19, 1999, the day of his plea and sentencing. On April 24, 2001, the ACCA affirmed the court-martial's judgment in a per curiam decision, stating that it had taken into "consideration . . . the entire record, including . . . the issues personally specified by" Armann.

### 3. Armann's appeal to the CAAF

On May 22, 2001, Armann filed a petition for review in the United States Court of Appeals for the Armed Forces (CAAF).[3] On October 11, 2001, in support of the petition for

---

[3]This court was formerly known as the Court of Military Appeals and is referred to as such in certain case law. Like our treatment of the ACCA's past titles, we will reference the CAAF when appropriate.

review, he filed a supplement in which he asserted the same three arguments previously raised in his principal brief to the ACCA. As with the ACCA proceedings, Armann once more exercised his *Grostefon* rights, personally raising issues apart from the principal brief's arguments, which again were attached as an appendix. However, among other issues raised, Armann for the first time asserted that he was mentally incompetent at the time of plea and sentencing due to the medications he had taken that day and that "the Military Judge improperly accepted the guilty plea . . . without first inquiring into the medication that was prescribed to him."[4]

In addition to his petition for review, Armann filed a petition for new trial in which he asserted there was newly discovered evidence about Accutane, a drug he had taken in the past.[5] On October 19, 2001, the Government filed a letter with

---

[4]The military process allows a defendant to raise questions about competency on appeal that were not previously asserted at trial. *See United States v. Massey*, 27 M.J. 371, 373-74 (C.M.A. 1989). Where a military appellate court finds it cannot issue a ruling on the defendant's competency claim based on insufficient factual development, it may remand for a hearing. *See United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). Thus, there is no procedural default issue regarding Armann raising this argument for the first time to the CAAF.

[5]Armann filed his petition for new trial with the ACCA on August 9, 2001, which referred it to the CAAF; the CAAF

8

the CAAF clerk's office that addressed both the petition for review and the petition for new trial.[6] First, addressing Armann's petition for review, the Government indicated it would not be submitting a formal reply to Armann's supplement to the petition. Rather, the letter stated, the Government opposed the CAAF's granting the petition for review and would rely on the same briefs it filed with the ACCA, which the Government attached to the letter. The Government acknowledged Armann's new *Grostefon* submission, which raised the mental competency issues. It stated, though, that it opposed the CAAF reviewing these issues, absent "good cause" suggesting why the claims were being raised at this juncture. Second, the Government addressed Armann's petition for new trial by noting that it would respond to the newly discovered evidence issue at a later time.

On November 15, 2001, Armann filed a brief in support of his petition for new trial, in which he argued that there was "good cause" for a new trial based on newly discovered

---

accepted it on October 16, 2001.

[6]The CAAF procedural rules allow this: "[A]n appellee may file with the Clerk of the Court a short letter . . . setting forth" either "(i) that the United States submits a general opposition to the assigned error(s) of law and relies on its brief filed with the Court of Criminal Appeals; or (ii) that the United States does not oppose the granting of the petition (for some specific reason, such as an error involving an unsettled area of the law)." Ct. App. Armed Forces R. 21(c)(2).

psychotic effects of Accutane. Specifically, Armann argued that this newly discovered evidence called into question whether he was competent to stand trial and whether he was able to "appreciat[e] the wrongfulness of his actions at the time he committed the offenses." Armann filed a motion to attach eighteen exhibits, which included documents in support of Accutane's adverse effects. One of the exhibits was Armann's "Statement and Verification Signed by Kurtis E. Armann (November 8, 2001)," a document in which he argued that the newly discovered effects of Accutane called into question whether he "appreciated the wrongfulness of his conduct, and more importantly whether or not he was competent to stand trial." He also drew attention to the combination of drugs he had taken on March 19, 1999, the day of his plea and sentencing, listing the various effects such drugs could cause and stating the combination "could have easily put [him] into the range of toxic exposure." (App. 1085 (emphasis omitted)).

The Government opposed Armann's motion to attach portions of his Statement and Verification as well as miscellaneous medical records. In particular, it asserted that Armann's argument that he was "involuntary intoxicated during his guilty plea trial" due to the medications he had taken was "not the issue before" the CAAF in Armann's new trial petition. Also, in a footnote, the Government noted that it had reviewed his *Grostefon* claim in the new trial petition and concluded that the claim "lacks merit." On December 17, 2001, as promised by its prior letter to the CAAF, the Government filed a brief in response to Armann's petition for new trial. It argued that Accutane's effects were "known at the time of trial" and were discoverable with "due diligence." Also, the Government noted

10

again, as it had before in its letter, its conclusion that Armann's *Grostefon* claims "all lack merit." It added, though, that if the CAAF "determine[d] that the issues raised by [Armann] ha[d] possible merit, the Government request[ed] an opportunity to submit further pleadings thereon."

On January 7, 2002, the CAAF ruled on Armann's motion to attach exhibits to his petition for new trial. It granted his motion to attach his Statement and Verification, which included his competency arguments, but denied his motion for the other exhibits, one of which included the medical logs from the Mannheim facility.

On July 24, 2002, the CAAF ruled on both of Armann's petitions, summarily granting his petition for review, affirming the ACCA's decision, and denying his petition for new trial. The CAAF did not issue an opinion stating its reasoning for affirming the ACCA or denying Armann's petition for new trial. Rather, the order contained one sentence:

> "On consideration of the petition for grant of review of the decision of the United States Army Court of Criminal Appeals, and the petition for new trial, it is, by the Court, this 24th day of July, 2002,
>
> ORDERED:
>
> That said petition is hereby granted;

11

> That the decision of the United States
> Army Court of Criminal Appeals is
> affirmed; and,
>
> That the petition for new trial is denied."

(App. 1120).

### B. The federal habeas proceedings

On April 22, 2004, Armann filed a pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in the United States District Court for the Western District of Pennsylvania. He raised several grounds in support of his petition, most of which stemmed from his receiving medication during the court-martial proceedings. Among these claims, he again raised that he was not competent on the day of his plea and sentencing, just as he had in his *Grostefon* submission in his petition for review to the CAAF.

On December 29, 2005, Armann filed a motion requesting an evidentiary hearing, concentrating solely on his "claim that he was not competent at his plea and sentencing due to the drugs that were given to him by the Army on the day of his plea and sentencing." The Government opposed the motion. On March 14, 2006, the Magistrate Judge to whom the District Court had assigned the case granted Armann's motion and ordered an evidentiary hearing. The District Court, having determined that not all of the CAAF documents had been included in the record, remanded the case to the Magistrate Judge in order to reconsider the evidentiary hearing motion in

12

light of the complete record. On remand, the Magistrate Judge again granted the motion for an evidentiary hearing.

The District Court adopted the Magistrate Judge's decision on May 31, 2007, and in a separate opinion, articulated its reasoning for doing so. *See Armann v. Warden*, No. 04-118, 2007 WL 1576407 (W.D. Pa. May 31, 2007). The District Court acknowledged that *Burns v. Wilson*, 346 U.S. 137 (1953) (plurality opinion), instructed that a federal court may not grant a military prisoner's habeas corpus writ "to re-evaluate evidence" so long as "a military decision has dealt fully and fairly with" the claim being asserted on habeas review. *Armann*, 2007 WL 1576407, at *4 (internal quotation marks omitted). The District Court reviewed the confusion among the federal courts, left in the wake of *Burns*, as to the interpretation of the full and fair consideration test. *Id.*, at *5. Focusing on *Brosius v. Warden*, 278 F.3d 239 (3d Cir. 2002), it highlighted that this Court assumed for the sake of argument that 28 U.S.C. § 2254 of the Antiterrorism and Effective Death Penalty Act (AEDPA), the statutory provision applicable to state prisoners, applied to a military prisoner's habeas claims. *Armann*, 2007 WL 1576407, at *6. Consequently, the District Court agreed with the Magistrate Judge that § 2254(d) set forth the appropriate scope of review for Armann's claims. *Id.*, at *7. It then confirmed that pre-AEDPA standards applied because the military courts did not consider Armann's competency claims and "§ 2254(d) only applies to claims that were 'adjudicated on the merits.'" *Id.* (quoting § 2254(d)). Therefore, it agreed with the Magistrate Judge's "pre-AEDPA independent judgment" that an evidentiary hearing was justified based on a lack of

13

factual findings by the military courts pertaining to Armann's competency claim. *Id.*, at *8.

## II. JURISDICTION

The District Court had jurisdiction pursuant to 28 U.S.C. § 2241. Following its order adopting the Magistrate Judge's decision to grant an evidentiary hearing, the District Court granted the Government's Motion for Certification of Order for Interlocutory Appeal. In doing so, the District Court stated that under 28 U.S.C. § 1292(b), the order granting Armann's motion for an evidentiary hearing "'involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" (App. 14 (quoting § 1292(b))). We granted the Government's Petition for Permission to Appeal and exercise our discretionary appellate jurisdiction pursuant to § 1292(b).[7]

---

[7]An order granting an evidentiary hearing is reviewed for abuse of discretion, *Schriro v. Landrigan*, 127 S. Ct. 1933, 1940, 1944 (2007), which occurs upon committing an error at law, *Koon v. United States*, 518 U.S. 81, 100 (1996). We apply de novo review to the legal determinations made by the District Court and review its factual findings for clear error. *Chadwick v. Janecka*, 312 F.3d 597, 605 n.6 (3d Cir. 2002); *see also United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008) (discussing review standards).

14

## III. DISCUSSION

On appeal, the Government raises the sole issue of whether the District Court erred in adopting the Magistrate Judge's decision to order an evidentiary hearing, asserting that the military courts provided "fair consideration" to Armann's claims. It contends that *Burns v. Wilson* provides the governing standard that district courts must apply when analyzing a military prisoner's habeas petition and argues that the District Court misinterpreted this Court's decision in *Brosius v. Warden* when it applied the state-prisoner habeas standard, § 2254, to Armann's claims. The Government concludes that even if the District Court correctly determined that § 2254 applies to Armann's claims, he is not entitled to habeas relief because the District Court erroneously determined that pre-AEDPA standards apply to this case and § 2254(e)(2), the standard for evidentiary hearings under AEDPA, bars relief.

Armann, on the other hand, argues that the military courts did not consider his competency claim. As a result, he maintains, this Court need not decide whether the District Court correctly adopted § 2254 rather than *Burns* because where a military or state court did not consider a habeas petitioner's claim, the District Court may review the claim de novo. Armann asserts that should this Court choose to rule on the correct standard of review, AEDPA strikes the proper balance between affording deference to military proceedings and safeguarding individual rights. He requests that we uphold the District Court's determination to not apply the § 2254 standard because the military courts did not rule "on the merits" of Armann's claim. Even assuming § 2254(e)(2) applies in this

15

case, Armann concludes that he is entitled to relief because he raised his competency claims with the CAAF and attempted to factually develop his claims.

As an initial matter, we are not convinced by Armann's argument that we need not decide whether *Burns* or § 2254 applies to this case. *Burns* and § 2254 involve facially different standards as to whether the military or state courts considered a petitioner's claims thereby triggering de novo review in federal court. In *Burns*, a plurality of the Supreme Court stated that where military courts "manifestly refused to consider" a petitioner's claims, a district court may review the claims de novo. 346 U.S. at 142. Under § 2254(d), a district court applies a de novo standard of review – and is not bound by the AEDPA scope of review – where the state courts failed to adjudicate the claim "on the merits." Therefore, contrary to Armann's argument, we find it necessary to first reach the threshold issue of whether *Burns* or § 2254 governs the District Court's review of the military-court proceedings.

For the reasons that follow, we conclude that when a federal civilian court reviews a habeas corpus petition of a servicemember convicted in the military courts, *Burns v. Wilson* requires the federal habeas court to deny relief where the military courts provided full and fair consideration to the claim or claims asserted in the habeas petition. *Brosius v. Warden* did not signal an official analytical departure from our prior *Burns* jurisprudence and the District Court erred in treating § 2254(d) as the dispositive standard. Here, the record indicates that the military courts did provide full and fair consideration of

16

Armann's claim that he was mentally incompetent on the day of plea and sentencing.

### A. The scope of federal habeas review

#### 1. *Burns v. Wilson*

In *Burns v. Wilson*, the Supreme Court directly confronted the scope of review a federal district court must apply when it analyzes a servicemember's habeas corpus petition contesting military court proceedings. The petitioners in *Burns* had been found guilty of murder and rape and were sentenced to death by an Air Force courts-martial. 346 U.S. at 138. After exhausting all military remedies, they petitioned for habeas corpus relief in federal district court. *Id.* The district court dismissed the petitions, basing the dismissal on its finding that the military courts had jurisdiction. *Id.*[8] The Court of Appeals affirmed the dismissal, but gave the petitions "full consideration on their merits," a broader scope of review than previously afforded. *Burns*, 346 U.S. at 139.

The Supreme Court affirmed the dismissal, but issued a splintered decision as to its reasoning. The plurality opinion, carrying four Justices, articulated a "concern . . . with the manner in which the [federal district court] should proceed to exercise its power." *Id.* The plurality recognized that the same

---

[8]At one time, review for proper military-court jurisdiction was the only concern for a federal habeas court. *See*, *e.g.*, *Hiatt v. Brown*, 339 U.S. 103, 111 (1950).

federal statute, 28 U.S.C. § 2241, vests jurisdiction in the federal courts to hear both civilian and military habeas petitions, but hastened to add that "in military habeas corpus the inquiry, the scope of matters open for review, has always been more narrow than in civil cases." *Id.* The law regarding federal-court review of military habeas petitions "cannot simply be assimilated to the law" applicable to other areas due to "the peculiar relationship between the civil and military law." *Id.* at 139-40. The plurality highlighted that "[i]n military habeas corpus cases, even more than in state habeas corpus cases, it would be in disregard of the statutory scheme if the federal civil courts failed to take account of the prior proceedings – of the fair determinations of the military tribunals after all military remedies have been exhausted." *Id.* at 142.

Thus, "when a military decision has dealt fully and fairly with an allegation raised in [a habeas corpus petition], it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." *Id.* The plurality cautioned, however, that where "the military courts manifestly refused to consider [the habeas] claims, the District Court [is] empowered to review them *de novo*." *Id.* Yet where "the military courts have heard [a petitioner] out on every significant allegation . . . it is not the duty of the civil courts simply to repeat that process – to reexamine and reweigh each item of evidence of the occurrence of events which tend to prove or disprove one of the allegations in the application[] for habeas corpus." *Id.* at 144. Instead, "[i]t is the limited function of the civil courts to determine whether

18

the military have given fair consideration to each of these claims." *Id.*[9]

## 2. AEDPA and § 2254

In 1996, Congress passed AEDPA which implemented substantial changes into federal habeas corpus law. The focal point of the Act is 28 U.S.C. § 2254(d), a provision that establishes a deferential standard that federal courts sitting in habeas are to afford state-court decisions. *See Taylor v. Horn*, 504 F.3d 416, 428-29 (3d Cir. 2007) (discussing review under AEDPA). Section 2254(d) provides:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on

---

[9]Although the *Burns* "full and fair consideration" test came from a plurality decision, the test likely held water with at least five, perhaps six, Justices, thereby carrying a majority of the Court. *See Brosius*, 278 F.3d at 243 (interpreting *Burns*). Justice Minton concurred in affirming the judgment, but wrote separately to express his view that the "one function" entrusted to federal courts reviewing military habeas petitions is to ensure "that the military court has jurisdiction," a view calling for even greater deference to the military proceedings than the plurality yielded. *Burns*, 346 U.S. at 147 (Minton, J., concurring). Justice Jackson concurred without opinion.

19

the merits in State court proceedings unless the adjudication of the claim –

> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*See also Williams v. Taylor*, 529 U.S. 362, 402-13 (2000) (clarifying § 2254(d)(1)).

The § 2254(d) standard is only applicable "to claims already 'adjudicated on the merits in State court proceedings.'" *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001) (quoting § 2254(d)). If the state court did not decide the merits of a claim being presented in an applicant's federal habeas petition, the § 2254(d) standard does not apply and a federal court will review pure legal issues and mixed questions of law and fact de novo. *Id.* In the present case, the District Court adopted the Magistrate Judge's findings that since the military courts did not consider Armann's competency claims, § 2254(d) did not apply and pre-AEDPA habeas standards governed whether to grant an evidentiary hearing.

20

Regardless of whether the state courts adjudicated the claim on the merits, 28 U.S.C. § 2254(e)(1) states that "a determination of a factual issue made by a State court shall be presumed to be correct," unless the petitioner rebuts it "by clear and convincing evidence." *See also Taylor*, 504 F.3d at 429 (explaining § 2254(e)(1)). Additionally, 28 U.S.C. § 2254(e)(2) addresses the required AEDPA standard a district court must apply in order to hold an evidentiary hearing. The District Court did not apply these standards, however, since it determined § 2254(d) directed it to apply pre-AEDPA standards.

While the Supreme Court has not revisited the *Burns* scope of review in recent years, this Court has recognized that the full and fair consideration test is intact even following AEDPA's alterations to habeas law. *See Brosius*, 278 F.3d at 242-43 (stating that close to fifty years after the decision, *Burns* "is still the leading authority"). Additionally, members of the Supreme Court have cited to *Burns* with approval since AEDPA's passage. *See Boumediene v. Bush*, 128 S. Ct. 2229, 2286 (2008) (Roberts, C.J., dissenting) ("The scope of federal habeas review is traditionally more limited in some contexts than in others, depending on the status of the detainee and the rights he may assert." (citing *Burns*)); *Clinton v. Goldsmith*, 526 U.S. 529, 537 n.11 (1999) (A servicemember "is entitled to bring a habeas corpus petition claiming that his conviction is affected by a fundamental defect that requires that it be set aside" (internal citation omitted) (citing *Burns*)). Despite our recognition of *Burns*'s vitality in light of AEDPA, our *Brosius* decision has seemingly spawned uncertainty as to whether this Court has equated the full and fair consideration test with the

21

scope of review embedded in the § 2254(d) state-court standard. We take this opportunity to clarify our analysis in *Brosius*.

### 3. This Court's treatment of *Burns*

We acknowledge from the outset that the *Burns* decision is far from clear. *See Levy v. Parker*, 478 F.2d 772, 781 n.9 (3d Cir. 1973) (noting that the *Burns* standard is "easy to state, but difficult to define and to apply") (internal quotation marks and citation omitted).[10] This Court's approach to analyzing military habeas petitions is not free of ambiguity, nor has there been much coverage of the issue. *See Brosius*, 278 F.3d at 244 ("Our court's treatment of Burns has also been far from seamless.").

In one of our early *Burns* interpretations, we addressed whether a military petitioner's due process rights were violated

---

[10]The case law interpreting the full and fair consideration test lacks uniformity. *See*, *e.g.*, *United States ex rel. New v. Rumsfeld*, 448 F.3d 403, 408 (D.C. Cir. 2006) (stating a court-martial judgment is void if the error is "fundamental"); *Witham v. United States*, 355 F.3d 501, 505 (6th Cir. 2004) (stating that "[w]here there is no colorable jurisdictional question, a finding of full and fair consideration ends our habeas corpus inquiry"); *Roberts v. Callahan*, 321 F.3d 994, 996 (10th Cir. 2003) (reviewing four-part test applied in both the Fifth and Tenth Circuits to determine full and fair consideration); *Allen v. VanCantfort*, 436 F.2d 625, 629-30 (1st Cir. 1971) (noting *Burns*'s applicability, and its generated criticism, before "review[ing] briefly [the] petitioner's claims on the merits").

when at trial certain crime definitions were not included in the instructions to the members of the court-martial. *White v. Humphrey*, 212 F.2d 503, 504 (3d Cir. 1954). Citing *Burns*, we stated in *White* that had the court-martial "manifestly not considered" the issues and "fixed guilt by dispensing with rudimentary fairness," a federal court could grant the petitioner's habeas writ. *Id.* at 507 (internal quotation marks omitted). We found, however, no such indication of manifest refusal in the record. *Id.* In *United States ex rel. Thompson v. Parker*, we provided a fuller enunciation of *Burns*'s implications, acknowledging *Burns* as "the law of the land" and finding that the full and fair consideration test was applicable to instances where the military habeas petition called for a re-evaluation of facts leading to the alleged constitutional violation. 399 F.2d 774, 776-77 (3d Cir. 1968) (internal quotation marks omitted).

Several years later, in *Levy v. Parker* we focused largely on *Burns*'s language which recognized the need to protect individual rights, reading the case to allow review of the petitioner's claim that a military regulation was void for vagueness. 478 F.2d 772, 776, 783 (3d Cir. 1973), *rev'd on other grounds*, 417 U.S. 733 (1974). We appeared to draw a law and fact dichotomy, implying that *Burns*'s full and fair consideration test might only apply to constitutional claims which are mixed with, or based solely upon, factual determinations made by the military courts. *Id.* at 783. We noted that "where it is unnecessary to 'reevaluate the evidence' adduced at the court-martial because the alleged infirmity is the facial unconstitutionality of the statute under which appellant was charged, a federal court has jurisdiction to inquire whether

23

there existed an infirmity of constitutional dimension in the court-martial proceeding." *Id.*

Our next major pronouncement pertaining to *Burns* came years later in *Brosius v. Warden*. *See* 278 F.3d at 242-45 (discussing *Burns*). In *Brosius*, the petitioner was convicted of unpremeditated murder by a general court-martial. *Id.* at 240. Both the Army Court of Military Review (i.e., the ACCA) and the Court of Military Appeals (i.e., the CAAF) affirmed the conviction, with the Court of Military Appeals issuing a summary affirmance. *Id.* On federal habeas review, the petitioner argued that Army officials violated his *Miranda* rights and his rights under UCMJ Article 31(b) (which also deals with required warnings). *Id.* at 245. The district court, in denying the habeas petition, recognized that *Burns* applied to the petitioner's claims, but noted the difficulty of the full and fair consideration determination. *Brosius v. Warden*, 125 F. Supp. 2d 681, 689, 695 (M.D. Pa. 2000). The district court's analysis ultimately traced the four-factor test enunciated by the Fifth and later the Tenth Circuits, expressing that it would "use this test in disposing of the instant petition." *Id.* at 689 (citing *Dodson v. Zelez*, 917 F.2d 1250 (10th Cir. 1990) and *Calley v. Callaway*, 519 F.2d 184 (5th Cir. 1975) (en banc)).

On appeal, we affirmed the district court's order denying habeas relief, *Brosius*, 278 F.3d at 250, but based our reasoning on different grounds. We began by addressing the correct standard that a federal court must apply to a servicemember's habeas claims, acknowledging that "[n]early 50 years after it was decided, the Supreme Court's decision in *Burns v. Wilson* is still the leading authority." *Id.* at 242-43 (internal citation

24

omitted).  We interpreted *Burns* as holding "that in considering a constitutional claim involving a pure question of law or a mixed question of law and fact, a habeas court may not exercise de novo review and may not go beyond considering whether the military courts 'dealt fully and fairly' with the claim."  *Id.* at 243.[11]  Additionally, we stated that the *Burns* plurality appeared to indicate "that full and fair consideration was intended to mean no more than 'hearing' the petitioners 'out.'"  *Brosius*, 278 F.3d at 243-44 (quoting *Burns*, 346 U.S. at 144).

We then reviewed the difficulty that not only this Court has had in applying the *Burns* test, but the problems other Courts of Appeals have encountered.  *Id.* at 244-45.  We explained that

---

[11]The *Burns* plurality did not create a distinction between pure questions of law, questions of fact, and mixed questions of law and fact.  Our categorizing dicta in *Brosius* was important for our analysis, which utilized § 2254(d), a standard that calls for such characterization.  *See Brosius*, 278 F.3d at 245, 246 (comparing § 2254(d) and (e)).  While we have treated a court's mental competency determination as a factual finding, *see McFadden v. United States*, 814 F.2d 144, 146 (3d Cir. 1987), we do not read *Burns* as mandating a federal habeas court to disregard per se a petitioner's constitutional claim due to its factual nature.  Rather, *Burns* stated in a generalized fashion that where the military courts have "dealt fully and fairly with" a habeas claim, a federal court must not "simply re-evaluate the evidence" and that the "limited function of the civil courts" was to analyze "whether the military have given fair consideration to" a habeas claim.  346 U.S. at 142, 144.

*Levy*'s "suggest[ion] that a habeas court may examine de novo those constitutional claims 'not dependent upon any evidentiary or factual construction'" should be narrowly read; any implication that a federal court may apply de novo review to questions of law would contradict *Burns*, "in which a majority of the Court (the plurality plus Justice Minton) applied a deferential standard of review to the claims that, on the undisputed facts, the habeas petitioners' constitutional rights were violated." *Id.* at 244 (quoting *Levy*, 478 F.2d at 783).

Confronted with *Burns*'s ambiguity, we deemed "it unnecessary to attempt any further explication." *Id.* at 245. Rather, we determined that "absent a challenge to the constitutionality of the statute under which the defendant was convicted," a federal court's review of "a military habeas case may not go further than our inquiry in a state habeas case." *Id.* We then stated:

> "[W]e will assume – *but solely for the sake of argument* – that we may review determinations made by the military courts in this case as if they were determinations made by state courts. Accordingly, we will assume that 28 U.S.C. § 2254(e)(1) applies to findings of historical fact made by the military courts. . . . In considering other determinations made by military courts, we will assume that 28 U.S.C. § 2254(d) applies."

*Id.* (emphasis in original). Applying the state standards to the petitioner's *Miranda* claim, we upheld the military determination pursuant to § 2254(d)(1). *Id.* at 246. We also

26

rejected the petitioner's UCMJ claim, finding any alleged error to be harmless, as well as his argument that *Edwards v. Arizona*, 451 U.S. 477 (1981), warranted suppression. 278 F.3d at 248-49.

Although in *Brosius* we questioned the feasibility of the *Burns* standard, we have not questioned its applicability. In *Thompson*, we refuted the petitioner's argument that the district court erroneously applied the *Burns* standard, referring to *Burns* as "the law of the land" and stating that "both this court and the district court must abide by its teaching." 399 F.2d at 776-77 (internal quotation marks and citation omitted). In *Brosius*, we again recognized that *Burns* was still binding law, but admitted the conceptual difficulty in applying the full and fair consideration test. 278 F.3d at 242-45.

Armann seeks to capitalize on our reaction to the test's difficulty, arguing that § 2254 would provide a more functional approach for federal courts. He points to the fact that the CAAF applies AEDPA when it sits in habeas review and notes that it cited our *Brosius* decision for its rationale. *See Loving v. United States*, 64 M.J. 132, 144-45 (C.A.A.F. 2006). Indeed, the CAAF has stated that AEDPA accords an appropriate balance between "protect[ing] the liberty and interests of individual servicemembers and . . . bolster[ing] deference to military legal determinations." *Id.* at 145. This argument has some merit because the Justices in *Burns* sought to attain the proper balance between individual rights and deference to military court determinations; thus, where the military itself finds AEDPA best serves these goals, it is tempting to afford that determination great weight. *See Burns*, 346 U.S. at 148 (Frankfurter, J.) ("On

27

the one hand is proper regard for habeas corpus, 'the great writ of liberty'; on the other hand the duty of civil courts to abstain from intervening in matters constitutionally committed to military justice.").

In the final analysis, we find Armann's argument unpersuasive, for it is solely the prerogative of the Supreme Court to depart from its precedents. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("The Court of Appeals was correct in applying that principle despite disagreement . . . for it is this Court's prerogative alone to overrule one of its precedents."). Regardless of the rationale in favor of applying AEDPA, the Supreme Court has not abandoned *Burns* since its issuance. Moreover, in adopting § 2254(d), the CAAF noted that it was deciding the appropriate standard "for collateral review within the military justice system," as opposed to the "task before Article III courts" of deciding "what standard comports with the full and fair requirement in *Burns v. Wilson*." *Loving*, 64 M.J. at 144-45. Therefore, a federal court's "limited function" in reviewing a servicemember's habeas petition is to determine whether the military courts have "dealt fully and fairly with an allegation raised in that application." *Burns*, 346 U.S. at 142, 144.

In *Brosius*, we applied the § 2254 standard to a military habeas petition, but explicitly did so simply for argument's sake in order to avoid the difficulty we must address in this case. 278 F.3d at 245. We were mindful that *Burns* called for a federal habeas court to afford more deference to military-court proceedings than state-court proceedings. *Id.* at 245 ("'In military habeas corpus cases, *even more than in state habeas*

28

*corpus cases*, it would be in disregard of the statutory scheme if the federal civil courts failed to take account of the prior proceedings.'" (quoting *Burns*, 346 U.S. at 142) (emphasis in original)). Building from this rationale, we reasoned that *Burns*, regardless of its precise implications, would certainly call for a denial of relief should a federal court determine that a petitioner is not entitled to relief under § 2254. *Id.* In other words, we were not required to fine-tune the *Burns* standard because the petitioner in *Brosius* failed to establish entitlement to relief under the less deferential state standard. *See id.* at 246 (upholding military decision under § 2254(d)(1)).

We did not hold in *Brosius* that if a military prisoner meets § 2254 he satisfies *Burns*. Indeed, such a principle would contradict *Burns*'s effort to distinguish military courts from state courts and afford greater deference to the former. *See Burns*, 346 U.S. at 139 ("[I]n military habeas corpus the inquiry, the scope of matters open for review, has always been more narrow than in civil cases."). Nor did we hold that where a district court determines that the military courts did not adjudicate a servicemember's claim "on the merits," it should review that claim de novo. Rather, *Brosius* proposes that while it is permissible for a court to analyze a military prisoner's habeas petition under § 2254, only a determination that § 2254 bars relief will be dispositive of the case. Thus, a finding that § 2254 warrants relief will not necessarily equate with a finding that the petitioner is entitled to relief under *Burns*'s full and fair consideration test. A separate analysis is required to determine whether "the military courts have heard [a petitioner] out on every significant allegation" raised in his or her habeas petition. *Burns*, 346 U.S. at 144. Accordingly, the District Court erred in

29

adopting the Magistrate Judge's decision to grant Armann's motion for an evidentiary hearing after utilizing only the § 2254(d) scope of review, which led it to apply pre-AEDPA state-prisoner habeas standards.

## B. Full and fair consideration

In approaching our full and fair consideration analysis, we do not attempt to establish a detailed standard that will encapsulate the relevant inquiries in all military habeas cases. Instead, as *Burns* demonstrated, a federal court must review what occurred procedurally in the military courts to determine if a petitioner was afforded full and fair consideration to each of his or her claims. *See* 346 U.S. at 144-45. We believe that the military courts gave full and fair consideration to Armann's claim that he was mentally incompetent on the day of his plea and sentencing.

Contrary to Armann's assertions, the fact that the CAAF issued a summary order disposing of his case without noting his *Grostefon* submission does not equate with a finding that it did not fully and fairly consider his mental competency claim. Armann's case is largely controlled by our decision in *United States ex rel. Thompson v. Parker*, in which we found the military courts provided full and fair consideration even where the Court of Military Appeals (i.e., the CAAF) summarily denied the appellant's petition for grant of review. 399 F.2d at 776. In *Thompson*, we addressed whether the military courts provided full and fair consideration to a military petitioner's Fifth Amendment and UCMJ Article 31 claims. *Id.* at 774-75. We initially discussed that at the court-martial, the petitioner's

attorneys objected to the admissibility of the statements at issue and the petitioner was given the opportunity to testify as to the involuntary nature of the statements but refused. *Id.* at 775. We next stated that the Law Officer at the court-martial instructed the jury regarding the alleged involuntary statement. *Id.* We then took notice of the fact that the petitioner argued on military appeal "in great detail" that his constitutional and UCMJ rights were violated. *Id.*

However, neither the Board of Review (i.e., the ACCA) nor the Court of Military Appeals (i.e., the CAAF) expressly discussed the petitioner's involuntariness claim. *Id.* When the petitioner took contention with this, we found there to be "no requirement that appellate courts, military or otherwise, must discuss in detail each and every contention – no matter how specious – of every appellant." *Id.* at 775-76. We found it permissible that the Board of Review discussed only the "colorably creditable" claims (though it did state it found "no merit in any of the" issues raised by appellant), and that the Court of Military Appeals denied, in a single-sentence order, the petition for grant of review of the Board's decision. *Id.* at 776. We reasoned that "since both these appellate military courts had the benefit of the extensive discussion appearing in appellant's briefs . . . we can only conclude, as did the district court, that appellant received full and fair consideration of his claims in the military courts." *Id.*

Various parallels can be drawn between our *Thompson* decision and Armann's case. First, Armann had sufficient opportunity to raise his competency claim during the court-martial. The Military Judge ordered a Sanity Board

31

determination, probing specifically whether Armann was competent to stand trial and did so even in light of Armann's defense counsel's objections. Granted, the Sanity Board determination occurred over a month before the day of his plea and sentencing. Still, the Military Judge, by ordering the determination, demonstrated concern about Armann's competency to stand trial and also asked Armann's counsel on the day of plea and sentencing whether there were any motions he wished to put forth. As in *Thompson*, both courts afforded the petitioner a chance to further elaborate during the court-martial upon the issues which the defendants asserted on appeal.

Next, like the *Thompson* petitioner, Armann argued "in great detail," 399 F.2d at 775, to the CAAF that his constitutional rights were violated because he was not competent to stand trial on the day of his plea and sentencing. Armann first asserted the claim to the CAAF in his *Grostefon* filing attached to his petition for review, and by granting Armann's petition, the CAAF placed those arguments before it. Armann again raised the plea and sentencing date in his Statement and Verification associated with his petition for new trial, in which he highlighted the combination of drugs administered on March 19 and the various potential effects of such a mixture. He then cited various passages from case law which spoke of mental competency. The CAAF granted his motion to attach that statement in full, again bringing the competency issue before that court.

Armann argues that *Thompson* is distinguishable from this case because here the competency issue was "not fully briefed," alleging that the Government failed to adequately

address the issue in its filings before the CAAF. Likewise, the District Court refused to give weight to the Government's reliance on *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir. 1986), for the principle that a military court's summary denial can qualify as full and fair consideration. *Armann*, 2007 WL 1576407, at *7 n.2. The District Court emphasized the *Watson* language indicating that the full and fair consideration test is met "'[w]hen an issue is briefed and argued before a military board of review'" before noting that the § 2254(d)(1) standard was applicable to Armann's claim. *Armann*, 2007 WL 1576407, at *7 n.2 (quoting *Watson*, 782 F.2d at 145).

We are not convinced that the Government's failure to file a brief in response to Armann's competency claim means that the military courts failed to adequately consider the claim. In *Watson*, the Court of Appeals for the Tenth Circuit stated that where "an issue is briefed and argued before a military board of review," there is sufficient consideration, even though the military court "summarily disposed of the issue with the mere statement that it did not consider the issue meritorious or requiring discussion." 782 F.2d at 145. As the Government indicates, *Watson* did not establish full briefing by both sides as a prerequisite to satisfying *Burns*. Rather, the Court of Appeals held that the military courts provided full and fair consideration to a petitioner's ineffective assistance of counsel claim where the Court of Military Review (i.e., the ACCA) afforded the petitioner a hearing and displayed that it analyzed the trial record of the court-martial. *Id.* We also do not find *Watson* directly applicable to the case before us because, as the Government aptly notes, unlike Armann the petitioner in *Watson* raised his claims to the intermediate military appellate court

33

rather than asserting them for the first time before the CAAF. *See id.*

Despite its failure to fully brief the competency issue, the Government did not ignore it. In its October 19, 2001 letter to the CAAF, it indicated that it would rely on the briefs it filed in the ACCA but expressly addressed Armann's new *Grostefon* filing, stating it opposed the CAAF reviewing these issues. In its opposition to Armann's motion to attach exhibits, the Government observed that Armann asserted in his Statement and Verification "that the types, amounts, and combination of medications that he was made to take while incarcerated resulted in him being involuntary intoxicated during his guilty plea trial," and argued that this was not relevant to his new trial petition. Further, in its brief in response to Armann's petition for a new trial, it called "attention to those errors personally raised by" Armann, arguing that these claims lacked merit; however, it continued, if the CAAF determined they were meritorious, it "request[ed] an opportunity to submit further pleadings thereon." Paired with the fact that the CAAF had Armann's *Grostefon* filings before it upon granting both his petition for review and his motion to attach his Statement and Verification, the Government's failure to fully brief the competency issue does not preclude a finding that the CAAF fully considered Armann's detailed arguments.

Lastly, in *Thompson* we realized that a military appellate court was not required to discuss a claim it found lacking in merit, determining that where the Court of Military Appeals (i.e., the CAAF) issued a one-sentence denial of a petition for review, teamed with "the extensive discussion appearing in

34

appellant's briefs concerning the alleged" constitutional violation, this amounted to full and fair consideration. 399 F.2d at 776. Armann did repeatedly brief the mental competency issue, both in his *Grostefon* filing to the petition for review, as well as in his Statement and Verification in support of his petition for new trial, and the CAAF had both of these filings before it prior to summarily affirming his conviction. Thus, *Thompson* supports our finding that the military courts provided adequate consideration under such circumstances.

Despite *Thompson*'s guidance, Armann asks this Court to hold the CAAF to its own decision in *Grostefon*, asserting that the CAAF should have issued a statement acknowledging it considered all the issues personally raised by the petitioner. While we recognize that the CAAF is not the last line of review in a military defendant's case – the Supreme Court may directly review the case and the federal courts have collateral review power – Armann's argument finds little concrete support. The Government aptly points out that the Court of Military Appeals (i.e., the CAAF) in *Grostefon* interpreted UCMJ Articles 66 and 70, neither of which bind the CAAF to the rule it issued pertaining to the intermediate military appellate courts. *Grostefon*, 12 M.J. at 435 n.3. Even if we were to find it preferable that the CAAF issue a statement that it considered all claims including those personally raised by the defendant, we seriously doubt that the federal civilian courts have power to impose such a requirement on the highest military court. "Military law, like state law, is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." *Burns*, 346 U.S. at 140; *see also United States v. Lumpkin*, 159 F.3d 983, 988 (6th Cir. 1998) (stating

35

that the *Grostefon* "procedure was specifically tailored and prescribed for use within the military justice system"). As the *Burns* plurality observed, "[t]his Court has played no role in [military law] development; we have exerted no supervisory power over the courts which enforce it." 346 U.S. at 140.

Armann correctly points out that the CAAF's summary affirmance of the ACCA could not have encompassed his competency claim because he did not raise the issue with the ACCA, even in his *Grostefon* filing before that intermediate appellate court. His principal brief filed with the ACCA raised only three issues, none of which encompassed any mental competency claims. In his *Grostefon* filing, he argued that he lacked "complete mental responsibility" for the offenses, which pertains to his mental state during the commission of the crimes, not his mental competency at the time of plea and sentencing. Therefore, the CAAF's affirmance of the ACCA's decision, by itself, does not amount to adequate consideration.

However, as we explained previously, the ACCA's decision was not the only determination before the CAAF. Armann filed a petition for review and a brief in support of that petition. Attached to the brief was Armann's second *Grostefon* filing which placed at issue before the CAAF the question of his mental competence at the time of plea and sentencing. As the Government indicates, the CAAF granted Armann's petition for review in its discretion, which encompassed his attached *Grostefon* filing. It also granted his motion to attach his Statement and Verification, which again called attention to his competency on March 19. Although the record does not explicitly indicate the CAAF reviewed Armann's assertion when

36

making its final disposition, this Court will not presume that the highest military court refused to consider the full record before it prior to making its decision. The CAAF, like the civilian courts, must diligently review all arguments presented by the parties, which included the competency issue now before us. *See Burns*, 346 U.S. at 142 ("The military courts, like the state courts, have the same responsibilities as do the federal courts to protect a person from a violation of his constitutional rights."). In sum, the military courts sufficiently attended to Armann's claim to satisfy the full and fair consideration test. Consequently, *Burns* instructs that we must not "grant the writ simply to re-evaluate the evidence." *Id.*

Because we find that the military courts provided full and fair consideration to Armann's claim, it follows that his argument that this Court should apply a de novo standard under *Burns* fails. Moreover, in *Burns*, the plurality stated that de novo review is only warranted where "the military courts manifestly refused to consider" a petitioner's claims. *Id.* at 142; *see also White*, 212 F.3d at 507. Elaborating, the plurality explained that due process safeguards servicemembers "from the crude injustices of a trial so conducted that it becomes bent on fixing guilt by dispensing with rudimentary fairness rather than finding truth through adherence to those basic guarantees which have long been recognized and honored by the military courts as well as the civil courts." 346 U.S. at 142-43.

Here, the military courts demonstrated no prejudicial animosity toward Armann and were certainly not "bent on fixing guilt" thereby ignoring "rudimentary fairness." At the trial level, the Military Judge ordered the Sanity Board to specifically

37

inquire into Armann's mental capacity, despite his own attorney objecting to such review. Although the Military Judge did not specifically inquire into whether Armann was taking medications on the day of his plea and sentencing, neither Armann nor his attorney raised the issue. Nor did he raise the issue with the ACCA. Only on appeal to the CAAF did Armann, for the first time, raise the mental competency issue. The CAAF had discretion whether to grant or deny Armann's petition for review, *see* 10 U.S.C. § 867, but chose to grant it nevertheless. As the Government indicates, the CAAF also had the authority to refuse to decide the merits of Armann's competency claim because he did not raise the assertion at trial or with the ACCA, yet it granted review of his petition in full. *See United States v. Bunkley*, 12 M.J. 240, 242 (C.M.A. 1982). Therefore, the military courts did not "manifestly refuse[] to consider" Armann's competency claim and the District Court should not have endorsed the Magistrate Judge's de novo review prior to determining whether there was full and fair consideration in the military court proceedings.

## IV. CONCLUSION

For the aforementioned reasons, we will reverse the District Court's order.

38